UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAVANNAH BARROWS et al.,

                **Plaintiffs,**

                v.

BRINKER RESTAURANT
CORPORATION, d/b/a CHILI'S
GRILL & BAR,

                **Defendant.**
_____

5:19-cv-144
(GLS/ATB)

## SUMMARY ORDER

Defendant Brinker Restaurant Corporation, doing business as Chili's Grill & Bar, has moved to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure and compel arbitration pursuant to the Federal Arbitration Act.[1] (Dkt. No. 15.) For the reasons that follow, the motion is denied with leave to renew.

Plaintiffs Savannah Barrows and Michael Mendez, a former and current employee of Brinker, commenced this putative class action pursuant to the Fair Labor Standards Act[2] and New York law, seeking damages related to their employment with Brinker. (Compl. ¶¶ 1, 25, 42,

---

[1] *See* 9 U.S.C. §§ 1-16.

[2] *See* 29 U.S.C. §§ 201-19.

43, 57, Dkt. No. 1.) Brinker contends that, in connection with their "onboarding" as new hires, plaintiffs entered into an arbitration agreement,[3] which covers the claims in suit. (Dkt. No. 15, Attach. 2 ¶¶ 11, 15, 17, 18.) Brinker asserts, therefore, that this matter should be referred to arbitration and dismissed, or, alternatively, stayed pending arbitration. (Dkt. No. 15, Attach. 1.) More specifically, Brinker has furnished documents, which purportedly demonstrate that plaintiffs agreed to arbitrate by electronically signing them in the process of their onboarding. (Dkt. No. 15, Attach. 2 at 7, 9, 15, 17, 19-22, 24-27.)

Plaintiffs rebut Brinker's claim that an arbitration agreement was entered into by each of them with declarations wherein they deny electronically signing any of the documents in question; they each make other specific denials too. (Dkt. No. 20, Attach. 2 ¶¶ 23, 25, 28; Dkt. No. 20, Attach. 3 ¶¶ 12, 14, 17.) For example, Barrows asserts that she completed all of her paperwork by hand upon being hired by Brinker's predecessor and completed no additional paperwork when Brinker became the operator of the Chili's where she worked; she never accessed Chili's

---

[3] Principally, Brinker asserts that plaintiffs electronically signed documents titled "Electronic Signature Agreement," "Receipt of Brinker's Hourly Team Member Policies & Procedures Manual," and "Mutual Agreement to Arbitrate." (Dkt. No. 15, Attach. 2 at 7, 9, 15, 17, 19-22, 24-27.)

2

intranet, websites, or systems from any device except for a training video and once from a Chili's computer to enroll in Chili's 401K plan; she never owned a computer nor did she live in a house with a personal computer; and she has never heard of or used the Taleo system, which Brinker contends was used to electronically sign the documents. (Dkt. No. 20, Attach. 2 ¶¶ 4-5, 8-9, 11-13, 16-20.) Mendez alleges that, while he used the Taleo system for his initial application, he "never again used the Taleo" system; he never used a computer or electronic device to fill out employment documents; he did not use a computer at Chili's; and he never accessed the Chili's intranet, websites, or systems from any device except for a training video. (Dkt. No. 20, Attach. 3 ¶¶ 3-4, 6-8.)

Plaintiffs concede that, if the arbitration agreements were signed by them, they would require that this action be referred to arbitration. (Dkt. No. 20 at 2, 3.) Asserting that there are issues of material fact regarding the existence of an agreement to arbitrate, plaintiffs request that the court deny Brinker's motion and order limited discovery on the authenticity of the electronic signatures. (*Id.* at 4-18.)

In reply, and for the first time, Brinker submits additional declarations and a copy of an "Agreement to Arbitrate" apparently signed by Mendez's

3

hand. (Dkt. No. 24, Attachs. 1-4.) Among other things, Brinker expands upon its contention that an arbitration agreement existed between it and Barrows, arguing that beyond her electronic signatures, her conduct demonstrates her assent to the arbitration clause.[4] (Dkt. No. 24 at 7, 12-14.)

Motions to compel arbitration are governed by a standard akin to that of summary judgment. See *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). As relevant here, and given plaintiffs' admission that, if the agreements are binding, arbitrations is required, (Dkt. No. 20 at 2), Brinker "must make a prima facie initial showing that an agreement to arbitrate existed [under New York law] before the burden shifts to [plaintiffs] to put the making of that agreement 'in issue,'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (quoting 9 U.S.C. § 4); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding

---

[4] Brinker's argument in this regard appears to rely on broken logic. As its contention goes, because Barrows availed herself of the anti-harassment policy, she must have had the Team Member Manual, which also included the arbitration agreement language. (Dkt. No. 24 at 12-14.) It is rank speculation to say that, because she made a harassment claim, Barrows must have had the Manual. In any case, because this argument was raised for the first time in a reply, the court need not and does not resolve it.

whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Brown v. St. Paul Travelers Cos.*, 331 F. App'x 68, 70 (2d Cir. 2009) (relying on New York law to determine whether an agreement to arbitrate existed). If the existence of an agreement is properly put "in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Sphere Drake Ins. v. Clarendon Nat'l Ins.*, 263 F.3d 26, 30 (2d Cir. 2001) ("If the making of the agreement to arbitrate is placed in issue . . . the court *must* set the issue for trial." (emphasis added)).

"[T]he party putting the agreement to arbitrate in issue must present 'some evidence' in support of its claim before a trial is warranted." *Sphere Drake Ins.*, 263 F.3d at 30 (citations omitted). To put it differently, the party challenging the existence of an agreement must make "an unequivocal denial that the agreement had been made . . . , and some evidence should [be] produced to substantiate the denial." *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (quoting *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945); *accord Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 67-68 (2d Cir. 2005).

First and foremost, it is necessary to establish what is properly before the court and what is not. It is hornbook law that new arguments and evidence are not properly presented in a reply memorandum of law. *See Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016), *aff'd*, 707 F. App'x 724 (2d Cir. 2017) ("It is well-established that '[a]rguments may not be made for the first time in a reply brief.'" (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)); *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) (noting that the submission of new evidence and arguments in a reply is improper). Consequently, Brinker's new arguments, declarations, and exhibits offered for the first time in its reply will not be considered. Indeed, plaintiffs have had no opportunity to respond to them. As far as the record properly before the court, there are issues of fact, which preclude the court's referral of this matter to arbitration. Plaintiffs' declarations include unequivocal denials and factual allegations, detailed above, that tend to substantiate them.

For all of these reasons, Brinker's motion must be denied; however, it is not clear that the discovery requested by plaintiffs is warranted or appropriate. Indeed, the statute contemplates trial alone, *see* 9 U.S.C. § 4,

and plaintiffs have not suggested with any particularity what might be unearthed in discovery.  In other words, it is not apparent why discovery is preferable to trial.  And, even though the court has not relied upon it, the improperly submitted arbitration agreement that was apparently signed by Mendez's own hand cannot be unseen.  Therefore, while Brinker's motion is denied, it is denied with leave to renew.  The arguments raised and evidence submitted by Brinker for the first time in its reply regarding Barrows assent through conduct and Mendez's physically singed arbitration, may be the subject of that renewed motion along with any other potentially meritorious argument that has not been specifically rejected by this Summary Order.

Accordingly, it is hereby

**ORDERED** that Brinker's motion to dismiss and compel arbitration (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Brinker may renew its motion, consistent with the foregoing, within thirty (30) days of the date of this Summary Order; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

7

**IT IS SO ORDERED.**

March 30, 2020
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge