UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SAVANNAH BARROWS and MICHAEL MENDEZ,
Individually and on behalf of all other persons similarly
situated,

                                    Plaintiffs,

                    v.                                      Civil Case No.:
                                                            5:19-cv-144 (GLS/ATB)

BRINKER RESTAURANT CORPORATION d/b/a
CHILI'S GRILL & BAR,

                                    Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION TO DISMISS COMPLAINT AND COMPEL ARBITRATION

JACKSON LEWIS P.C.
677 Broadway, 9th Floor
Albany, NY 12207
(518) 512-8700

Attorneys of Record:
Kristi Rich Winters, Esq.
Vincent E. Polsinelli, Esq.

ATTORNEYS FOR DEFENDANT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

    A.    THE ONBOARDING PROCESS........................................................... 2

    B.    THE AGREEMENT TO ARBITRATE. ................................................ 6

    C.    BRINKER'S TEAM MEMBER MANUAL. ......................................... 7

    D.    PLAINTIFFS BREACHED THE AGREEMENT TO ARBITRATE BY
           FILING THIS LAWSUIT.................................................................... 8

ARGUMENT .............................................................................................................. 9

    A.    FEDERAL LAW REQUIRES THE COURT TO ENFORCE A VALID
           ARBITRATION AGREEMENT............................................................ 9

    B.    PLAINTIFFS ARE REQUIRED TO RESOLVE THE INSTANT DISPUTE
           THROUGH BINDING ARBITRATION ON AN INDIVIDUAL BASIS. ......... 11

           1.    THE PARTIES AGREED TO ARBITRATE.............................. 11

           2.    PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE
                AGREEMENT TO ARBITRATE. ................................................ 18

           3.    PLAINTIFFS' CLAIMS ARE NOT SUBJECT TO ANY
                 LEGISLATIVE EXEMPTION FROM ARBITRATION. .......................... 20

    C.    PLAINTIFFS ARE REQUIRED TO RESOLVE THE INSTANT DISPUTE
           THROUGH BINDING ARBITRATION ON AN INDIVIDUAL BASIS. ......... 21

    D.    BRINKER'S AGREEMENTS HAVE REPEATEDLY BEEN HELD
           ENFORCEABLE IN NUMEROUS JURISDICTIONS...................................... 24

    E.    THIS COURT SHOULD STAY THIS ACTION PENDING ARBITRATION.. 24

CONCLUSION.......................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Bezek v. NBC Universal*,
    No. 3:17-CV-1087 (JCH), 2018 U.S. Dist. LEXIS 86421 (D. Conn. May 23,
    2018) ...............................................................................................................................13

*Brown v. St. Paul Travelers*,
    559 F. Supp. 2d 288 (W.D.N.Y. 2008), aff'd, 331 F. App'x 68 (2d Cir. 2009) ....................17

*Chen-Oster v. Goldman, Sachs & Co.*,
    785 F. Supp. 2d 394 (S.D.N.Y. 2011).....................................................................................23

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001).............................................................................................................9, 20

*Clookey v. Citibank, N.A.*,
    No. 8:14-cv-1318, 2015 U.S. Dist. LEXIS 164802 (N.D.N.Y. Dec. 9, 2015) ............... *passim*

*Dreyfuss v. eTelecare Global Solutions-US, Inc.*,
    349 Fed. Appx. 551 (2d Cir. 2009).........................................................................................11

*Eldred v. Brinker Int'l, Inc.*,
    No. 56-2011-00403808 (Cal. Sup. Ct. Oct. 16, 2012) ...........................................................24

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................................................................................................11

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987)..............................................................................................10, 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)....................................................................................................................9

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004).....................................................................................................15

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003).................................................................................................................19

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
    372 F.2d 753 (2d Cir. 1967).....................................................................................................18

*Hickey v. Brinker Int'l Payroll Co, L.P.*,
    No. 1:13-cv-00951, 2014 U.S. Dist. LEXIS 20387 (D. Colo. Feb. 18, 2014)........................24

*Holick v. Cellular Sales of N.Y., Inc.*,
   937 F. Supp. 2d 311 (N.D.N.Y. 2013) ..................................................................20

*Howsam v. Dean Witter Reynolds*,
   537 U.S. 79 (2002) ..........................................................................................21

*Jackson v. University of Phoenix, Inc.*,
   2014 U.S. Dist. LEXIS 21175 (E.D.N.C. Feb. 20, 2014) ................................15, 16

*Johnson v. Brinker Int'l Payroll Co, L.P.*,
   No. C13-1090-JCC (W.D. Wash. Oct. 22, 2013) ..................................................24

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015) ...............................................................................24

*Keyes v. Ayco Co., L.P.*,
   No. 1:17-cv-00955, 2018 U.S. Dist. LEXIS 213417 (N.D.N.Y. Dec. 19, 2018) .............11, 24

*Klein v. ATP Flight Sch., LLP*,
   No. 14-CV-1522 (JFB) (GRB), 2014 U.S. Dist. LEXIS 91102 (E.D.N.Y. July
   3, 2014) ......................................................................................................9, 10

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) .....................................................................................22

*Liberty Mut. Ins. Co. v. N. Picco & Sons Contr. Co*,
   2008 U.S. Dist. LEXIS 4915 (S.D.N.Y. Jan. 16, 2008) .........................................10

*Litvinov v. UnitedHealth Group, Inc.*,
   No. 13 Civ. 8541 (KBF), 2014 U.S. Dist. LEXIS 36237 (S.D.N.Y. Mar. 10,
   2014) ............................................................................................................12

*Manigault v. Macy's East, LLC*,
   318 Fed. Appx. 6 (2d Cir. 2009) ........................................................................17

*McAllister v. East*,
   611 F. App'x 17 (2d Cir. 2015) .........................................................................17

*McMahon Sec. Co. L.P. v. Forum Capital Markets, L.P.*,
   35 F.3d 82 (2d Cir. 1994) ..................................................................................18

*McNeill v. Raymour & Flanigan Furniture*,
   No. 6:15-CV-1473, 2016 U.S. Dist. LEXIS 167285 (N.D.N.Y. Dec. 5, 2016)..................9, 10

*Meyer v. Starwood Hotels & Resorts Worldwide, Inc.*,
   No. 00-CV-8339, 2001 U.S. Dist. LEXIS 6663 (S.D.N.Y. Apr. 18, 2001)............................18

*Mina v. Foot Locker, Inc.*,
    No. 09 Civ. 0472 (DAB), 2009 U.S. Dist. LEXIS 93155 (S.D.N.Y. Sept. 30,
    2009) ................................................................................................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)........................................................................................................11

*Oldroyd v. Elmira Sav. Bank*,
    134 F.3d 72 (2d Cir. 1998)........................................................................................19, 20

*Padró v. Citibank, N.A.*,
    No. 14-CV-2986 (NGG) (LB), 2015 U.S. Dist. LEXIS 51442 (E.D.N.Y. Apr.
    17, 2015) ........................................................................................................................12

*Patterson v. Raymours Furniture Co.*,
    No. 14-CV-5882 (VEC), 2015 U.S. Dist. LEXIS 40162 (S.D.N.Y. Mar. 27,
    2015) ........................................................................................................................12, 17

*Perez v. Ruby Tuesday, Inc.*,
    No. 6:16-CV-795, 2019 U.S. Dist. LEXIS 13527 (N.D.N.Y. Jan. 28, 2019).............10, 11, 12

*Reynolds v. de Silva*,
    09 Civ. 9218 (CM), 2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010) ......................20

*Ryan v. JPMorgan Chase & Co.*,
    924 F. Supp. 2d 559 (S.D.N.Y. 2013)................................................................................11, 19

*Sanders v. Forex Capital Mkts., LLC*,
    2011 U.S. Dist. LEXIS 137961 (S.D.N.Y. Nov. 29, 2011) .............................................13, 23

*Savarese v. J.P. Morgan Chase*,
    No. 16-CV-321 (JFB) (SIL), 2016 U.S. Dist. LEXIS 159765 (E.D.N.Y. Nov.
    16, 2016) ........................................................................................................................12

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)................................................................................................19

*Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*,
    263 F.3d 26 (2d Cir. 2001)................................................................................................13

*Stacy v. Brinker*
    No., No. 1:12-cv-00851-LJO-BAM, 2012 U.S. Dist. LEXIS 150345 (E.D.
    Cal. October 16, 2012)........................................................................................................24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)................................................................................................21, 22, 23

iv

*Susana Garcia de Alba, et al. v. Brinker International, Inc., et al.*,
   Civil No. 2:16-cv-03486-FMO-JC (C.D. Cal. June 30, 2017) ...............................................24

*Teah v. Macy's Inc.*,
   No. 11-CV-1356, 2011 U.S. Dist. LEXIS 149274 (E.D.N.Y. Dec. 29, 2011) .......................18

*Thomas v. Public Storage, Inc.*,
   957 F. Supp. 2d 496 (S.D.N.Y. 2013)...........................................................................10, 17

*Torres v. United Healthcare Servs.*,
   920 F. Supp. 2d 368 (E.D.N.Y. 2013) ..................................................................................11

*Victorio v. Sammy's Fishbox Realty Co., LLC*,
   2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6, 2015).........................................................20

*Waumboldt v. Callimanopulos*,
   No. 11 CV-7416 (TPG), 2012 U.S. Dist. LEXIS 118231 (S.D.N.Y. Aug. 20,
   2012) .......................................................................................................................................19

*Weddington v. Chili's of West Virginia, Inc., et al.*,
   No. 14-C-601 .........................................................................................................................24

*Zambrano v. Strategic Delivery Solutions*,
   LLC, 15 Civ. 8410 (ER), 2016 U.S. Dist. LEXIS 130533 (S.D.N.Y. Sept. 22,
   2016) .......................................................................................................................................20

## Statutes

9 U.S.C. § 2.......................................................................................................................9, 17

9 U.S.C. § 3............................................................................................................................24

9 U.S.C. § 4............................................................................................................................10

Federal Arbitration Act .................................................................................................. *passim*

Fair Labor Standards Act ...........................................................................................8, 19, 20, 21

New York Labor Law .................................................................................................8, 19, 20, 21

## Other Authorities

Federal Rule of Civil Procedure 56 .........................................................................................10

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ...........................................................1

Pursuant to the Court's Summary Order dated March 30, 2020, Defendant Brinker International Payroll Company, L.P. ("Brinker" or "Defendant") respectfully renews its Motion under the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and the Local Rules of this Court, to dismiss Plaintiffs Savannah Barrows' and Michael Mendez's Class Action Complaint ("Complaint") and compel arbitration. For the following reasons, Brinker requests that the Court enter an order dismissing Plaintiffs' Complaint and compelling Plaintiffs to pursue their claims against Brinker in arbitration pursuant to the Arbitration Policies they entered into with Brinker.

## INTRODUCTION

Plaintiffs were employed by Brinker in various positions, including server and food runner, at a Chili's Grill & Bar restaurant in Clay, New York. At the time of hire, each Plaintiff signed an Agreement to Arbitrate by which they agreed to resolve all disputes arising out of or in connection with their employment with Brinker[1] through binding arbitration. The documentary evidence is clear that Plaintiffs signed and agreed to the Agreement to Arbitrate. Not only did Plaintiff Mendez electronically sign the Agreement to Arbitrate, he also signed the Agreement with his handwritten signature. Plaintiff Mendez's handwritten signature on the Agreement is clear evidence that an agreement to arbitrate was formed and also directly contradicts any claim that he did not sign the Agreement. Similarly, there is no question as to the autheniticity of Plaintiff Barrows' electronic signature on the Agreement to Arbitrate given the steps required in the electronic onboarding process, as described herein.

The Federal Arbitration Act ("FAA") mandates the enforcement of arbitration agreements according to their terms no matter what state law or policy might be invoked as a

---

[1] Brinker is identified in the Agreement as Brinker International Payroll Company, L.P. which is Plaintiffs' actual employer.

basis for non-enforcement.  Where, as here, the parties have agreed to resolve all disputes on an individual basis through binding arbitration, such agreements are fully enforceable.  Arbitration is the elected and required forum for resolving Plaintiffs' individual claims, which are fully within the scope of the Agreement to which Plaintiffs were subject as employees of Brinker. Accordingly, Defendant respectfully requests that this Court grant its motion and issue an order compelling arbitration of Plaintiffs' claims on an individual basis, and dismissing this action, including all individual and class-based claims, or at least stay these proceedings until conclusion of the arbitration.

## **STATEMENT OF FACTS**

### **A.    THE ONBOARDING PROCESS.**

Plaintiff Barrows was employed by Brinker from June 2015 to January 2019 as a Server. *See* Loeffler Decl. at ¶ 4.[2]  Plaintiff Mendez has been employed with Brinker since April 2017 in various positions, including food runner and host.  *See* Loeffler Decl. at ¶ 5.  At all times during Plaintiffs' employment, Brinker maintained a well-publicized and mandatory policy requiring its team members to agree to resolve all disputes arising out of or relating to their employment through binding arbitration on an individual basis.  *See* Loeffler Decl. at ¶ 32.

Brinker uses the Taleo system for employees to complete onboarding paperwork upon hire.  *See* Loeffler Decl. at ¶ 6.  Loeffler maintains Brinker's onboarding system, Taleo, and associated records created in the normal course of business.  *See* Loeffler Decl. ¶¶ 7, 43. Loeffler's Declaration describes how Taleo works and the process Team Members go through to review and sign onboarding documents, including the Agreement to Arbitrate.  *See* Loeffler Decl.  In particular, Loeffler explains that, when Team Members register with the Taleo system upon completing an employment application, they must create their own unique username and password.  *See* Loeffler Decl. ¶ 8.  Plaintiffs accessed Taleo through a websecure link, which

---

[2] The Declaration of Brandon Loeffler is filed simultaneously herewith.

required that Plaintiffs enter their unique username and password in order to gain access.  *See* Loeffler Decl. at ¶ 10.

In order to initiate an Employment Application, Plaintiff Mendez would have created his own unique username and password.  *See* Loeffler Decl. ¶¶ 8, 14.  Plaintiff Mendez registered with Brinker on February 1, 2017.  *See* Loeffler Decl. at ¶ 29.  As a required part of the online application process, Plaintiff Mendez had to answer two "Disqualification Questions" including:

> 1. Agreement to Arbitrate: To be considered for employment, you must read and agree to resolve all disputes with Brinker in accordance with Brinker's Agreement to Arbitrate Policy (click link above). Do you affirm that you have read the Agreement to Arbitrate and agree to resolve all disputes that arise between you and Brinker through formal, mandatory arbitration?

*See* Loeffler Decl. ¶ 15.  Plaintiff Mendez answered the foregoing question in the affirmative. *See* Loeffler Decl. ¶ 16; Ex. 8.  Plaintiff Mendez electronically signed his Employment Application on March 27, 2017, which noted the external IP address at which he had performed the transaction.[3]  *See* Loeffler Decl. ¶¶ 15, 17; Ex. 8.  Plaintiff Mendez accessed Taleo to complete his onboarding documents on April 10, 2017, with the same exact IP address he used to complete his Employment Application a few weeks earlier. *See* Loeffler Decl. at ¶¶ 15, 17, 29; Exs. 7-8.  Plaintiff Mendez also signed the Agreement to Arbitrate with a handwritten signature on April 10, 2017,  which opposing counsel has indicated he admits is his signature.  *See* Planty Decl. ¶ 10; Ex. A.

In order to finalize the hiring process, Plaintiffs were required by Brinker to complete onboarding documents in the Taleo system, which included, among other things, acknowledging and agreeing to various Brinker policies and procedures.  *See* Loeffler Decl. ¶ 18.  Brinker

---

[3] An internet search shows that the IP address is registered to Spectrum, a local internet provider. *See* https://whatismyipaddress.com/ip/24.59.74.175, last accessed on June 27, 2019.

acquired the Clay Chili's in June 2015 from a franchisee, Pepper Dining, Inc. ("PDI").  *See* Planty Decl. at ¶ 1.  Plaintiff Barrows was previously employed with PDI before she became an employee of Brinker.  *See* Planty Decl. at ¶ 3.  For Team Members who were previously employed with PDI, when they logged into Taleo for the first time, they had to use a temporary password which was comprised of their work location state; birth month; birth year; and the last four digits of their social security number.  *See* Loeffler Decl. ¶ 9.

There is a computer at the restaurant that Team Members are entitled to use to complete onboarding paperwork.  *See* Planty Decl. at ¶ 5; Hand Decl. ¶ 5; Michels Decl. ¶ 5.  The usernames and passwords that Team Members create are not visible or accessible to any other managers or Team Members.  *See* Loeffler Decl. at ¶ 13; Planty Decl. ¶ 6; Hand Decl. ¶ 6; Michels Decl. ¶ 6.

Plaintiff Barrows completed her onboarding documents in the Taleo system on September 13, 2015, with an IP address registered to Brinker—meaning that she completed the onboarding documents at the Clay restaurant.[4]  *See* Loeffler Decl. at ¶ 28; Ex. 6.  Indeed, Plaintiff Barrows' clock-in report shows that on September 13, 2015, she clocked in at 4:35 p.m. and clocked out at 11:10 p.m., working a total of 6.58 hours at the restaurant the day she signed the onboarding documents.  *See* Planty Decl. at ¶ 11; Ex. B.

After using their unique usernames and passwords to log in to the Taleo system, Plaintiffs were required to acknowledge and execute the Electronic Signature Agreement, affirming their willingness to complete and sign paperwork electronically.[5]  *See* Loeffler Decl. at ¶ 22.  To

---

[4]  An internet search shows that the IP address is registered to Brinker.  *See* https://whatismyipaddress.com/ip/63.163.55.1, last accessed on June 27, 2019.

[5] In relevant part, the Electronic Signature Agreement states:

> Brinker utilizes electronic signatures to verify that applicants and employees have received and agreed to certain documents and information.  Please click below to

execute this document, Plaintiffs had to again enter their unique password.  *See* Loeffler Decl. ¶ 21-24; Exs. 1-2.  Plaintiffs would have been unable to proceed any further in the process without signing and accepting the Electronic Signature Agreement, affirming their willingness to sign Brinker paperwork electronically.  *See* Loeffler Decl. at ¶ 21; Exs. 1, 2.

Loeffler then describes how after logging in to the system using Plaintiffs' unique usernames and passwords and agreeing to complete paperwork electronically by entering their passwords again, Plaintiffs were then presented with the Agreement to Arbitrate.[6]  *See* Loeffler Decl. at ¶ 26.   Plaintiffs were prompted yet again to enter their unique passwords to electronically execute the Agreement.  *See* Loeffler Decl. at ¶ 27.  Loeffler further explains that entering this unique password serves as the employee's electronic signature, and links the employee to the execution of the document.  *See* Loeffler Decl. at ¶ 12.  The electronic signature is not accomplished by the employee simply typing his or her own name.  *See* Loeffler Decl. at ¶ 12.

At no time did Planty, who was the General Manger of the Clay Chili's at the time Plaintiffs completed their onboarding documents, complete or instruct any other manager to complete onboarding paperwork for Plaintiffs or any other Team Member for that matter.  *See* Planty Decl. at ¶¶ 7-8; Hand Decl. ¶ 9; Michels Decl. ¶ 9.  Similarly, at no time did the Assistant

---

indicate that you voluntarily agree to enter into electronic agreements with Brinker using your electronic signature.  By indicating "I agree," you voluntarily acknowledge that your electronic signature is the legal equivalent of your manual signature and that Brinker may rely on such signature, and that it has the same force and effect as if actually signed by you in writing.

*See* Loeffler Decl., Exs. 1, 2.

[6] At the end, prior to the signature prompt, the Agreement states, in relevant part, "By signing below, I affirm that I have read the above Mutual Agreement to Arbitrate and agree to resolve all matters covered by the agreement through formal, mandatory arbitration as outlined above." Loeffler Decl. Exs. 6-7.

Managers of the Clay Chili's at the time Plaintiffs completed their onboarding documents complete any onboarding paperwork for Plaintiffs or any other Team Members.  *See* Hand Decl. ¶ 7; Michels Decl. ¶ 7.

> **B.      THE AGREEMENT TO ARBITRATE.**

The Agreement to Arbitrate signed by Plaintiffs included robust language making clear that *all* disputes arising out of or relating to a team member's engagement with or termination from Brinker is subject to mandatory, binding arbitration:

> Brinker International Payroll Company, L.P. ("Brinker") has various internal procedures for amicably resolving any complaints or disputes relating to your employment. However, if a complaint or dispute cannot be resolved internally, *below is an Agreement that provides for resolution of certain matters through formal, mandatory arbitration by an external, neutral arbitrator.*
>
> *Brinker and you agree to arbitrate all disputes . . . involving legal or equitable rights, which Brinker may have against you or you may have against Brinker,* its affiliates, subsidiaries, divisions, predecessors, successors, assigns and their current and former employees, officers, directors, and agents, *arising out of or in any manner related to the employment relationship.* This includes, for example, disputes about the hiring process or applications for employment, the terms and conditions of employment, wages and pay, leaves of absence, reasonable accommodation, or termination of employment. Such claims include, but are not limited to, those under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, the Family and Medical Leave Act, the Americans with Disabilities Act of 1990, Sections 1981 through 1988 of Title 42 of the United States Code, any state or local anti-discrimination, harassment, or wage laws (such as the Massachusetts Fair Employment Practices law), or any other federal, state, or local law, ordinance or regulation, or those based on any public policy, contract, tort, equitable theory, or common law or any claim for costs, fees, or other expenses or relief, including attorneys' fees. Matters covered by this Agreement are subject to arbitration, not a court or jury trial.

*See* Loeffler Decl. at Exs. 6, 7 (emphasis added).

Each version of the Agreement to Arbitrate in effect during Plaintiffs' employment has also set forth the rules for the arbitration, including, among other things: where the arbitration

will be held, the representation of the parties, statutes of limitation, discovery, and the manner in which the arbitrator will be selected.  *See* Loeffler Decl. at Exs. 6, 7.

In addition, each version of the Agreement to Arbitrate in effect during Plaintiffs' employment has provided only for arbitration on an individual team member basis.   The Agreement to Arbitrate has included an express reference to the individual nature of the arbitration contemplated thereby:

> *You and Brinker agree that all disputes covered by the Agreement must be pursued on an individual basis only and, to the maximum extent permitted by law, you and Brinker waive the right to commence, be a party to, participate in, receive money or any other relief from, or amend any existing lawsuit to include, any representative, collective or class proceeding or claims or to bring jointly any claim covered by this Agreement*. You and Brinker agree that neither you nor Brinker may bring a claim covered by this Agreement on behalf of other individuals or entities and an arbitrator may not: (a) combine more than one individual's claim or claims into a single case; (b) order, require, participate in or facilitate production of class-wide contact information or notification to others of potential claims; or (c) arbitrate any form of a class, collective, or representative proceeding.

*See* Loeffler Decl. at Exs. 6, 7 (emphasis added).

## C.   BRINKER'S TEAM MEMBER MANUAL.

Over the years, Brinker has used additional methods for communicating with applicants and team members about its arbitration policy and its Agreement to Arbitrate.  For example, Brinker has maintained and distributed a Team Member Policies and Procedures Manual (the "Team Member Manual"), which includes the full text of the Agreement to Arbitrate.  *See* Loeffler Decl. at ¶ 34; Ex. 3.  As part of its standard orientation process, Brinker makes the Team Member Manual available to all team members through the Company's well-publicized intranet site, and hard copies are also available upon request.  *See* Loeffler Decl. at ¶ 33.

The Team Member Manual in effect during the period of Plaintiffs' employment included the Agreement to Arbitrate, as well as an express advisement and acknowledgement that the

Agreement is a binding agreement.  *See, e.g.*, Loeffler Decl. at ¶ 34; Ex. 3 ("I understand that this Manual is not and was not intended to serve as a contract between Brinker International Payroll Company, L.P. ("Brinker"), or any of its related companies, and myself regarding the nature or duration of my employment, or any promise of future benefits, with the exception of the Agreement to Arbitrate.").  The Team Member Manual has also included an express advisement that the Agreement to Arbitrate could be amended or modified upon reasonable notice.  *See, e.g.*, Loeffler Decl. at ¶ 34; Ex. 3 ("If Brinker amends or terminates the Agreement to Arbitrate, the amendment or termination shall not be effective until 10 days after reasonable notice of the amendment or termination is given to Team Member . . .").  Both Plaintiffs signed an acknowledgement certifying that they had received Brinker's Team Member Manual, including the Arbitration Policy, and agreed to comply with the terms of each policy.  *See* Loeffler Decl. at ¶ 35; Exs. 4, 5.  The stand-alone versions of the Agreement to Arbitrate are substantively identical to the version contained in the Team Member Manual.  *Id.*

      **D.**    **PLAINTIFFS BREACHED THE AGREEMENT TO ARBITRATE BY FILING THIS LAWSUIT.**

Notwithstanding the Agreement to Arbitrate, on February 5, 2019, Plaintiffs filed this lawsuit against Brinker Restaurant Corporation, d/b/a Chili's Grill & Bar, alleging causes of action for: (1) failure to pay minimum wage in violation of the Fair Labor Standards Act ("FLSA"); (2) failure to pay wages in violation of the New York Labor Law ("NYLL"); (3) failure to pay minimum wage in violation of the NYLL; (4) failure to pay "spread of hours" compensation in violation of the New York Codes, Rules and Regulations ("NYCRR"); (5) improperly retaining gratuities in violation of the NYLL; (6) failure to provide annual wage notices in violation of the NYLL; (7) failure to provide wage statements in violation of the NYLL; and (8) failure to pay uniform maintenance allowance in violation of NYLL.

## ARGUMENT

### A.      FEDERAL LAW REQUIRES THE COURT TO ENFORCE A VALID ARBITRATION AGREEMENT.

The FAA applies to arbitration agreements in employment contracts.  *See* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that the FAA governs arbitration clauses in employment contracts).   As the Supreme Court has noted, Congress enacted the FAA to dispel judicial hostility towards arbitration and "to place arbitration agreements on the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).  Accordingly, the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The FAA creates a strong presumption in favor of the enforcement of an agreement to arbitrate.[7]  "Indeed, the Second Circuit has held that 'it is difficult to overstate the strong federal policy in favor of arbitration.'"  *Id.* (quoting *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006)).  Avoiding the costs of litigation is "a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts," and the FAA should be construed to promote the "efficacy of alternative dispute resolution procedures adopted by many of the Nation's employers."  *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).

Similar to federal law, New York also has a strong public policy favoring arbitration of disputes.  *See Mina v. Foot Locker, Inc.*, No. 09 Civ. 0472 (DAB), 2009 U.S. Dist. LEXIS

---

[7] *See McNeill v. Raymour & Flanigan Furniture*, No. 6:15-CV-1473 (GTS/TWD), 2016 U.S. Dist. LEXIS 167285, at *10 (N.D.N.Y. Dec. 5, 2016); *Clookey v. Citibank, N.A.*, No. 8:14-cv-1318 (GLS/DJS), 2015 U.S. Dist. LEXIS 164802, at *4-5 (N.D.N.Y. Dec. 9, 2015); *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 (JFB) (GRB), 2014 U.S. Dist. LEXIS 91102, at *10 (E.D.N.Y. July 3, 2014) (citing *Preston v. Ferrer*, 552 U.S. 346, 353, (2008)).

93155, at *5 (S.D.N.Y. Sept. 30, 2009) (confirming that "federal policy and New York law strongly favor arbitration agreements").[8]

Further, upon finding that a dispute is subject to a binding arbitration agreement, the FAA *mandates* courts to compel arbitration of the dispute.  9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").  In construing this obligation, the Second Circuit has emphasized that, "by its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).

Given this mandate, "the Court evaluates a motion to compel arbitration under a standard similar to the standard for a summary judgment motion made pursuant to Federal Rule of Civil Procedure 56." *Klein*, 2014 U.S. Dist. LEXIS 91102, at *7 (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).  *See also Perez v. Ruby Tuesday, Inc.*, No. 6:16-CV-795, 2019 U.S. Dist. LEXIS 13527, at *4 (N.D.N.Y. Jan. 28, 2019); *McNeill*, 2016 U.S. Dist. LEXIS 167285, at *11.  Thus, courts must grant a motion to compel arbitration "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." *Thomas v.*

---

[8] *See also Liberty Mut. Ins. Co. v. N. Picco & Sons Contr. Co*, 2008 U.S. Dist. LEXIS 4915, at *32 (S.D.N.Y. Jan. 16, 2008) ("New York law likewise 'favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties.'") (quoting *Nationwide Gen. Ins. Co. v. Investors Ins. Co. of Am.*, 37 N.Y.2d 91, 95, 371 N.Y.S.2d 463, 466 (1975)).

*Public Storage, Inc.*, 957 F. Supp. 2d 496 (S.D.N.Y. 2013).  This standard is readily met here, thereby requiring the Court to compel arbitration.

### B.   PLAINTIFFS ARE REQUIRED TO RESOLVE THE INSTANT DISPUTE THROUGH BINDING ARBITRATION ON AN INDIVIDUAL BASIS.

In determining whether to compel arbitration pursuant to the FAA, courts in the Second Circuit assess: (1) whether the parties agreed to arbitrate; (2) whether the claims at issue fall within the scope of the arbitration agreement; (3) if federal statutory claims are asserted, whether Congress intended to preclude arbitration of those claims; and (4) if the Court concludes that some, but not all, of the claims in the case are subject to arbitration, the Court must determine whether to stay the balance of the proceedings pending arbitration.  *Perez*, 2019 U.S. Dist. LEXIS 13527, at *8.[9]

In deciding whether the disputes before it are within the scope of the arbitration agreement, courts apply "federal substantive law of arbitrability," which requires the court to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).[10]  Plaintiffs entered into a valid and enforceable Agreement to Arbitrate that encompasses their claims in this case.

#### 1.  The Parties Agreed To Arbitrate.

To determine whether a valid arbitration agreement exists, courts  apply  the  "ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v.*

---

[9] *See also Keyes v. Ayco Co., L.P.*, No. 1:17-cv-00955 (BKS/DJS), 2018 U.S. Dist. LEXIS 213417, at *6-7 (N.D.N.Y. Dec. 19, 2018); *Genesco, Inc.*, 815 F.2d at 844; *Torres v. United Healthcare Servs.*, 920 F. Supp. 2d 368, 373 (E.D.N.Y. 2013); *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 562-63 (S.D.N.Y. 2013).
[10] *See also Dreyfuss v. eTelecare Global Solutions-US, Inc.*, 349 Fed. Appx. 551, 553 (2d Cir. 2009) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .") (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

*Kaplan*, 514 U.S. 938, 944 (1995).  *See also Clookey*, 2015 U.S. Dist. LEXIS 164802, at *6.

"To form a valid contract under New York law, there must be an offer, acceptance,

consideration, mutual assent and intent to be bound."  *Perez*, 2019 U.S. Dist. LEXIS 13527, at

*8-9 (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) ("Whether or not

the parties have agreed to arbitrate is a question of state contract law.")).  "Under New York law,

a party who signs a written contract is conclusively presumed to know its contents and to assent

to them, and he is therefore bound by its terms and conditions."  *Patterson v. Raymours*

*Furniture Co.*, No. 14-CV-5882 (VEC), 2015 U.S. Dist. LEXIS 40162, at *7 (S.D.N.Y. Mar. 27,

2015).

      Here, there is no question that the parties agreed to arbitrate.  As an initial matter, it is

well-settled that an electronic signature has the same "validity and effect as the use of a signature

affixed by hand."  *See Savarese v. J.P. Morgan Chase*, No. 16-CV-321 (JFB) (SIL), 2016 U.S.

Dist. LEXIS 159765, at *9 (E.D.N.Y. Nov. 16, 2016) (citing N.Y.S. Tech. L § 304 and rejecting

argument by plaintiff that defendant did not sufficiently prove the validity of his electronic

signature, finding no legal basis for the purported requirements identified by plaintiff, and

rejecting his attempt to invalidate the agreement based on failure to "recall" electronically

signing).[11]  Plaintiff Barrows' electronic signature and Plaintiff Mendez's handwritten and

electronic signatures on the Agreement to Arbitrate serve as presumptive evidence that an

---

[11] *See also Perez*, 2019 U.S. Dist. LEXIS 13527, at *9 (holding that "defendants have carried
their burden of demonstrating that the parties agreed to arbitrate pursuant to the Agreement, a
copy of which was electronically signed by [the plaintiff]"); *Padró v. Citibank, N.A.*, No. 14-CV-
2986 (NGG) (LB), 2015 U.S. Dist. LEXIS 51442, at *12-13 (E.D.N.Y. Apr. 17, 2015)
(compelling arbitration and holding that the plaintiff's "electronic acknowledgment [of the
employee handbook] serves as presumptive evidence that an agreement to arbitrate was
formed"); *Litvinov v. UnitedHealth Group, Inc.*, No. 13 Civ. 8541 (KBF), 2014 U.S. Dist.
LEXIS 36237, at *11 (S.D.N.Y. Mar. 10, 2014) (compelling arbitration and holding that the
parties agreed to arbitrate because the plaintiff "electronically acknowledged that she received
and reviewed the Arbitration Policy").

agreement to arbitrate was formed.  Plaintiffs also signed acknowledgements of the Team Member Manual, which contained the Arbitration Policy.

Any self-serving assertions by Plaintiffs that they did not sign the Agreement to Arbitrate are not supported by any competent and credible evidence.  "[T]he party putting the agreement to arbitrate in issue must present 'some evidence' in support of its claim before a trial is warranted."  *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001)). *See also Bezek v. NBC Universal*, No. 3:17-CV-1087 (JCH), 2018 U.S. Dist. LEXIS 86421, at *21-22 (D. Conn. May 23, 2018) ("In order to create a genuine issue of material fact, bare denials of an agreement to arbitrate are insufficient.") (citing *Sphere*, 263 F.3d at 30); *Sanders v. Forex Capital Mkts., LLC*, 2011 U.S. Dist. LEXIS 137961, at *8 (S.D.N.Y. Nov. 29, 2011) ("[The plaintiff] states that he has no memory of signing the arbitration clause. What he remembers, however, is irrelevant. The issue is whether [the plaintiff] agreed to arbitrate disputes. The record evidence indicates that he did and [the plaintiff] offers no competent evidence that he did not.").

Here, neither Plaintiff provides any credible evidence that supports their bare and conclusory denials.  With respect to Plaintiff Mendez, his handwritten signature on the Agreement to Arbitrate means that his claims are unquestionably subject to arbitration on an individual basis.  Further, even if that were not the case, the documentary evidence also shows that Plaintiff Mendez electronically signed the Agreement to Arbitrate.  In order to initiate an Employment Application prior to being hired, Plaintiff Mendez would have created his own unique username and password.  *See* Loeffler Decl. ¶¶ 8, 14.  Plaintiff Mendez admits that he registered with Brinker to submit an application.  *See* Court's Summary Order p. 3.  Thus, Mendez would have been the only person with access to his unique username and password in

order to access Taleo to complete his onboarding documents, including the Agreement to Arbitrate. The IP address that Plaintiff Mendez used to complete his Employment Application is also the same IP address used to complete his onboarding documents. It is simply not credible for Plaintiff Mendez to concede that he accessed Taleo for some purposes, but yet conveniently deny that he accessed the system to sign the very documents at issue on this Motion.

Nor is it plausible for Plaintiff Barrows to deny that she electronically signed the Agreement to Arbitrate or the acknowledgement for Brinker's Team Member Manual. As discussed above, Plaintiff Barrows would have electronically signed these onboarding documents with her own unique username and password. *See* Loeffler Decl. at ¶¶ 27-28. Plaintiff Barrows admits that she accessed Brinker's intranet, websites and/or systems for a training video and from a Brinker's computer to enroll in Brinker's 401(k) plan. *See* Court's Summary Order pp. 2-3. Thus, similar to Plaintiff Mendez, it is simply not credible for Plaintiff Barrows to admit that she accessed Brinker's systems for some purposes, and offer only bare denials that she accessed the system to sign the documents at issue here.

Managers and other Team Members do not have access to other Team Members' usernames or passwords. *See* Loeffler Decl. at ¶ 13; Planty Decl. ¶ 6; Hand Decl. ¶ 6; Michels Decl. ¶ 6. The evidence also shows that Plaintiff Barrows was working for more than six hours at Brinker's restaurant on September 13, 2015, the day in which the Taleo system shows she electronically signed the Agreement to Arbitrate and the acknowledgement for Brinker's Team Member Manual on a computer located at the restaurant. *See* Planty Decl. at ¶ 11; Ex. B.

Nor is there any evidence whatsoever that the electronic signatures on the Agreements to Arbitrate were somehow fabricated or forged. There is absolutely no evidence that any store manager would have been able to forge signatures on either of Plaintiffs' onboarding documents

14

or that they did so.  Indeed, Planty, who was the General Manager, and Hand and Michels, the Assistant Managers at the time Plaintiffs completed their onboarding documents, deny that they ever completed Plaintiffs' electronic signatures, or that Planty ever instructed any other manager to do so.  *See* Planty Decl. at ¶¶ 7-8; Hand Decl. ¶¶ 7-9; Michels Decl. ¶¶ 7-9.  Planty, Hand and Michels did not even have access to any Team Members' usernames or passwords.  *See* Loeffler Decl. at ¶ 13; Planty Decl. ¶ 6; Hand Decl. ¶ 6; Michels Decl. ¶ 6.

Moreover, as discussed above, Brinker has provided ample evidence otherwise, including Declarations from Loeffler, Planty, Hand and Michels, as well as copies of the executed electronic signature onboarding documents that conclusively demonstrate that they were signed by Plaintiffs.  *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them.").

In similar cases outside this Circuit, courts have granted motions to compel arbitration despite a plaintiff's denial that an arbitration agreement was signed.  *See, e.g., Jackson v. University of Phoenix, Inc.*, 2014 U.S. Dist. LEXIS 21175 (E.D.N.C. Feb. 20, 2014).  In *Jackson*, the Eastern District of North Carolina considered the plaintiff's declaration that he "never knowingly placed his signature, by handwriting or electronically, on any document acknowledging his acceptance of an arbitration clause."  *Id*. at *2.  The court found,

> [P]laintiff's loose allegation that his arbitration acknowledgment signature is fraudulent is entirely unsupported.  He offers only his own statement with the statements of two other employees that speculate that defendant prepared and submitted fraudulent documents to the Court.  He offers no evidence that factually supports his claim.

*Id*. at *3.  Importantly, the *Jackson* court considered the security measures and protections in place to prevent access to an employee's personal information.  "Such measures include

passwords that are only known to the employees themselves." *Id.* at \*4.  Because of the security measures, the court found the plaintiff's claim of fraud as to the signature on the arbitration agreement "wholly unconvincing in light of defendant's evidence."  *Id.* (citing *Castro Rosas v. Macy's, Inc.*, 2012 U.S. Dist. LEXIS 121400, \*13-15 (C.D. Cal. Aug. 24, 2012) (enforcing arbitration agreement and holding that plaintiff's claims that defendant fraudulently affixed plaintiff's signatures to acknowledgment forms were unconvincing where the personal information required for completion of the online forms suggested that only the plaintiffs themselves could have completed them)).  Importantly, despite the plaintiff's bare denials, the *Jackson* court granted the defendant's motion to compel arbitration and did not find that a trial was necessary.  *Id.* at \*3-8.

Here, Loeffler has provided a Declaration showing that significant security measures were in place to determine the person to which the electronic record or electronic signature was attributable.  Specifically, Loeffler states that to first log in to Taleo, Plaintiffs were required to enter their unique usernames and passwords.  This is comparable to the security requirements present in *Jackson*.  However, the Taleo system then goes a step further.  In order to electronically sign the Agreement to Arbitrate, Plaintiffs had to again enter their unique passwords into the system.

Moreover, Plaintiff Barrows' continued employment is also sufficient to bind her to the Agreement to Arbitrate.  Plaintiff Barrows accepted the terms of the Agreement to Arbitrate and the Team Member Manual, and the Arbitration Policy contained therein, through her continued employment with Brinker.  Plaintiff Barrows' acceptance of and continued employment with Brinker is sufficient to bind her to Brinker's valid and enforceable Arbitration Policy.

16

Under New York law an employee does not need to sign an arbitration agreement in order to be bound by the terms of the arbitration agreement. *Brown v. St. Paul Travelers*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008), aff'd, 331 F. App'x 68 (2d Cir. 2009).   It is well established that the FAA does not require that both parties sign a written acknowledgment of an arbitration agreement; it mandates only that the agreement itself be in writing. *See* 9 U.S.C. § 2; *Brown*, 331 F. App'x 69-70; *McAllister v. East*, 611 F. App'x 17, 19-20 (2d Cir. 2015) ("[G]iven the Defendants' evidence that [the plaintiff] received and accepted the employee handbooks, she may not defeat the motion to compel arbitration by resting on her bare denials that she did not receive the handbooks, but instead 'must submit evidentiary facts showing that there is a dispute of fact to be tried.'").   In the absence of a signed agreement, New York courts look to the conduct of the parties to determine mutual assent to be bound by the terms of an arbitration agreement. *See Brown*, 331 F. App'x 69-70.

New York courts have routinely held that employees who continue to work for their employer after receipt of an arbitration policy are deemed to have consented to the arbitration policy regardless of whether or not the consent was in writing. *See e.g., Brown*, 559 F.Supp. 2d 288 (finding that the plaintiff was subject to the company's arbitration policy despite the fact that she did not sign a written acknowledgement); *Patterson v. Raymours Furniture Co.*, 2015 U.S. Dist. LEXIS 40162 (S.D.N.Y. Mar. 27, 2015) (holding that "by continuing to work after receiving notice of the [arbitration policy], Plaintiff agreed to the terms of the arbitration program"); *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499, 2 (S.D.N.Y. 2013) (ruling that "continued employment, without more, is sufficient to manifest assent to arbitration where any employee received documents that contained such information, continued with her employment, and did not opt out of arbitration"); *Manigault v. Macy's East, LLC*, 318 Fed.

Appx. 6, 8 (2d Cir. 2009) (holding that the plaintiff's continued employment constituted an agreement to arbitrate, despite the plaintiff's claim that she did not receive the arbitration agreement or sign a document to that effect).

There was also clearly sufficient consideration for the Agreement to Arbitrate as both parties are bound to arbitrate their claims against each other arising out of the employment relationship.  *See Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) (holding that a party's "promise to arbitrate was sufficient consideration to support [the other party's] promise to arbitrate"); *Teah v. Macy's Inc.*, No. 11-CV-1356, 2011 U.S. Dist. LEXIS 149274, at *5 (E.D.N.Y. Dec. 29, 2011) ("There is clearly adequate consideration for the arbitration agreement, as it binds both parties to arbitrate their claims . . .".); *Meyer v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 00-CV-8339, 2001 U.S. Dist. LEXIS 6663, at *2 (S.D.N.Y. Apr. 18, 2001) ("[In] a contract to arbitrate disputes respecting employment, . . . the mutually binding nature of the arbitration clause constitutes valid consideration.").

Accordingly, given that there is no issue of fact as to the making of the Agreement to Arbitrate, there is also no need for further discovery or a trial on the authenticity of Plaintiffs' handwritten and electronic signatures, and Brinker's Motion should be granted.

### 2.   Plaintiffs' Claims Fall Within The Scope Of The Agreement To Arbitrate.

Here, there can be no dispute that the Agreement to Arbitrate—which applies to all disputes involving legally protected rights, whether they be derived under federal state or local statute, contract or the common law—covers Plaintiffs' claims.  The language in the Agreement to Arbitrate is more than broad enough to encompass Plaintiffs' wage and hour claims, and thus, Plaintiffs' claims undoubtedly fall within the scope of the Agreement.  In determining whether signatories have agreed to arbitrate their dispute, arbitration clauses are to be construed "as broadly as possible."  *McMahon Sec. Co. L.P. v. Forum Capital Markets, L.P.*, 35 F.3d 82, 88

(2d Cir. 1994).  If there is any doubt about the scope of the arbitrable issues, the court must resolve that doubt in favor of arbitration.  *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998).  Further, the existence of a broad agreement to arbitrate "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999); *see also Waumboldt v. Callimanopulos*, No. 11 CV-7416 (TPG), 2012 U.S. Dist. LEXIS 118231 at *8 (S.D.N.Y. Aug. 20, 2012).

Here, there is no doubt that the parties agreed to arbitrate FLSA and NYLL claims. Indeed, the Agreement to Arbitrate explicitly provides:

> *Brinker and you agree to arbitrate all disputes. . . involving legal or equitable rights, which Brinker may have against you or you may have against Brinker*, . . . *arising out of or in any manner related to the employment relationship*. This includes, for example, . . . the terms and conditions of employment, wages and pay, . . . . Such claims include, but are not limited to, those under the . . . the Fair Labor Standards Act, . . . any state or local . . . wage laws . . . or any other federal, state, or local law, ordinance or regulation, or those based on any public policy, contract, tort, equitable theory, or common law or any claim for costs, fees, or other expenses or relief, including attorneys' fees. Matters covered by this Agreement are subject to arbitration, not a court or jury trial.

*See* Loeffler Decl. at ¶¶ 28-29; Exs. 6, 7 (emphasis added).

It is clear that the express terms of the Agreement to Arbitrate explicitly include all claims for unpaid wages under the FLSA and NYLL asserted in the Complaint, and such claims must be arbitrated.  *See, e.g., Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559 (S.D.N.Y. 2013) (granting motion to dismiss collective-action claims and compel arbitration of Plaintiff's wage-hour claims on an individual basis).  Accordingly, Plaintiffs' claims fall squarely within the scope of the Agreement to Arbitrate and must be arbitrated.

### 3. Plaintiffs' Claims Are Not Subject To Any Legislative Exemption From Arbitration.

All of Plaintiffs' claims asserted in the Complaint are within the scope of the Agreement to Arbitrate and the mandate of the FAA.  Plaintiffs claim that they and others were not properly paid under the FLSA and NYLL.  It is well-settled that agreements to arbitrate claims in the employment context, including arbitration of wage claims, are valid and enforceable.  *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context . . . . Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.") (citations omitted).  The burden of demonstrating that Congress intended to preclude arbitration of a federal statutory claim lies with the party opposing arbitration.  *See Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 78 (2d Cir. 1998).

Moreover, there is nothing in the language or history of the relevant federal statute (*i.e.*, FLSA) to indicate a congressional intent to foreclose arbitration of the wage claims asserted by Plaintiffs. *See Holick v. Cellular Sales of N.Y., Inc.*, 937 F. Supp. 2d 311 (N.D.N.Y. 2013) ("Congress intended plaintiffs' FLSA claims to be subject to arbitration under the FAA."). Indeed, courts in this District routinely hold that FLSA and NYLL claims are arbitrable and may be compelled to arbitration.  *See, e.g., Zambrano v. Strategic Delivery Solutions*, LLC, 15 Civ. 8410 (ER), 2016 U.S. Dist. LEXIS 130533 (S.D.N.Y. Sept. 22, 2016); *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6, 2015) ("Courts in this District have repeatedly found both FLSA and NYLL claims to be arbitrable[]."); *Reynolds v. de Silva*, 09 Civ. 9218 (CM), 2010 U.S. Dist. LEXIS 18040, at *5 (S.D.N.Y. Feb. 24, 2010)

(collecting cases). Plaintiffs have unquestionably entered into a valid, enforceable written Agreement to Arbitrate the very same claims they purport to bring before this Court.

### C. PLAINTIFFS ARE REQUIRED TO RESOLVE THE INSTANT DISPUTE THROUGH BINDING ARBITRATION ON AN INDIVIDUAL BASIS.

The FLSA and NYLL claims in the Complaint are pled on a class and collective action basis. Plaintiffs seek to represent other employees whom they allege are similarly situated. However, arbitration of Plaintiffs' claims on an individual basis, not a class basis, is required because the Parties did not agree to class arbitration. As the scope of the Agreement to Arbitrate is a "gateway" issue, it is one for this Court to decide. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002). *See also Clookey*, 2015 U.S. Dist. LEXIS 164802, at *11 ("This threshold issue [of whether the plaintiff's claims should be arbitrated individually rather than as a class] is properly decided by the court rather than an arbitrator because the clear language of the clause is not susceptible to an interpretation that contemplates class arbitration.").

In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010), the U.S. Supreme Court held that class wide arbitration is not appropriate unless the parties have affirmatively agreed to arbitrate class disputes. *Id.* at 684. The Supreme Court granted certiorari to determine whether the FAA permitted the imposition of class arbitration on parties where the arbitration clause was silent as to class arbitration. The Supreme Court held that imposing class arbitration on parties who have not agreed to authorize class arbitration is inconsistent with the FAA because it imposes a term upon the parties to which they had not agreed. *Id.* at 681-88 ("[A] party may not be compelled under [an arbitration agreement governed by] the FAA to submit to class arbitration unless there is a contractual basis for concluding that both parties agreed to do so."). In reaching its decision, the Supreme Court recognized the vast differences between a class and a bilateral arbitration, and explained that there can be no inference that an agreement to

arbitrate class claims has been made simply because the parties entered into an agreement to arbitrate, since imposing such a term drastically alters the parties' agreement:

> An implicit agreement to authorize class-action arbitration … is not a term that . . . may [be] inferred solely from the fact of the parties agreement to arbitrate.  This is so because a class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.

*Id.* at 624.  "The differences between bilateral and class-action arbitration are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 687.

The U.S. Supreme Court used this reasoning in *Stolt-Nielsen S.A.* to hold that "Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417-1419 (2019) ("Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself").  "Like silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[ ] the principal advantage of arbitration.'" *Id. at *13* (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011)).  Thus, arbitration agreements must clearly and unmistakably state that the parties agreed to resolve class and collective actions through arbitration, and without such an agreement, a party cannot be compelled to class arbitration. *Id.*

Here, the Agreement to Arbitrate goes even further—it is not merely silent or ambiguous on the issue.  Indeed, there can be no dispute that the Agreement to Arbitrate affirmatively requires arbitration of Plaintiffs' claims on an individual basis.  The Agreement to Arbitrate expressly precludes class arbitration.  The language of the Agreement to Arbitrate clearly establishes the parties' intent to litigate disputes only on an individualized basis.  The Agreement

to Arbitrate included an express reference to the individual nature of the arbitration contemplated thereby:

> *You and Brinker agree that all disputes covered by the Agreement must be pursued on an individual basis only and, to the maximum extent permitted by law, you and Brinker waive the right to commence, be a party to, participate in, receive money or any other relief from, or amend any existing lawsuit to include, any representative, collective or class proceeding or claims or to bring jointly any claim covered by this Agreement.* You and Brinker agree that neither you nor Brinker may bring a claim covered by this Agreement on behalf of other individuals or entities and an arbitrator may not: (a) combine more than one individual's claim or claims into a single case; (b) order, require, participate in or facilitate production of class-wide contact information or notification to others of potential claims; or (c) arbitrate any form of a class, collective, or representative proceeding.

*See* Loeffler Decl. at ¶¶ 28-29; Exs. 6, 7 (emphasis added).

Accordingly, the Agreement to Arbitrate is a valid agreement to arbitrate the types of claims Plaintiffs assert in this case on an individual basis.  This Court should compel arbitration of Plaintiffs' claims on an individual basis.  *See Clookey*, 2015 U.S. Dist. LEXIS 164802, at *10 (holding that the plaintiff must arbitrate his claims individually as "[h]ere, unlike silent or unclear arbitration clauses, the Card Agreement addresses class arbitration and expressly precludes it").  *See also Sanders v. Forex Capital Mkts., LLC*, No. 11-CV-0864 (CM), 2011 U.S. Dist. LEXIS 137961 at *28 (S.D.N.Y. Nov. 29, 2011) (holding that plaintiff must arbitrate claims "on an individual basis, as there is no provision in the contract which contemplates class arbitration."); *Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 403-405 (S.D.N.Y. 2011) (rejecting plaintiff's proposed consideration of extrinsic evidence where applicable agreement was unambiguous and silent with respect to class arbitration and holding defendant cannot be compelled to submit to class arbitration under *Stolt-Nielsen* and New York contract law in the absence of an explicit provision).

### D.   BRINKER'S AGREEMENTS HAVE REPEATEDLY BEEN HELD ENFORCEABLE IN NUMEROUS JURISDICTIONS.

Brinker's Agreement to Arbitrate has repeatedly been enforced by courts in several other jurisdictions, of which the Court may take judicial notice.  *See* Declaration of Kristi Rich Winters[12], Exhibit A (*Aminah Dehbashi Behbahani v. Brinker International Payroll Company, L.P., et al.*," Case No. BC 683594 (April 25, 2018)); Exhibit B (*Susana Garcia de Alba, et al. v. Brinker International, Inc., et al.*, Civil No. 2:16-cv-03486-FMO-JC (C.D. Cal. June 30, 2017)); Exhibit C (*Weddington v. Chili's of West Virginia, Inc., et al.*, No. 14-C-601, W.Va. Cir. Ct. (Aug. 26, 2014)), Exhibit D (*Hickey v. Brinker Int'l Payroll Co,, L.P.*, No. 1:13-cv-00951, 2014 U.S. Dist. LEXIS 20387 (D. Colo. Feb. 18, 2014)); Exhibit E (*Johnson v. Brinker Int'l Payroll Co,, L.P.*, No. C13-1090-JCC (W.D. Wash. Oct. 22, 2013)); and Exhibit F (*Stacy v. Brinker* No., No. 1:12-cv-00851-LJO-BAM, 2012 U.S. Dist. LEXIS 150345 (E.D. Cal. October 16, 2012)); Exhibit G (*Eldred v. Brinker Int'l, Inc.*, No. 56-2011-00403808, (Cal. Sup. Ct. Oct. 16, 2012)). Given the strong public policy favoring the enforcement of arbitration agreements according to their terms, Brinker respectfully submits that the Court is bound to give effect to the parties' agreement and compel Plaintiffs to pursue these pending employment-based claims on an individual basis in arbitration, as all of its sister courts have done in the above-cited cases.

### E.   THIS COURT SHOULD STAY THIS ACTION PENDING ARBITRATION.

The FAA mandates a stay of proceedings "when all of the claims in an action have been referred to arbitration and a stay requested."  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see also* 9 U.S.C. § 3.).  *See also Clookey*, 2015 U.S. Dist. LEXIS 164802, at *11. Accordingly, the Court should stay this action and direct Plaintiffs to file demands for arbitration.

---

[12] The Declaration of Attorney Kristi Rich Winters is filed simultaneously herewith.

## **CONCLUSION**

For the foregoing reasons, this Court should: (1) compel Plaintiffs to arbitrate their claims against Defendant on an individual basis; (2) dismiss the action, or at least stay these proceedings until conclusion of the arbitration; and (3) award Defendant its fees and costs incurred in making this motion.

Dated:  April 27, 2020                                        Respectfully submitted,

                                                  *ATTORNEYS FOR DEFENDANT*

                                      By:   */s/ Kristi Rich Winters*
                                             Kristi Rich Winters, Esq.
                                             Vincent E. Polsinelli, Esq.
                                             JACKSON LEWIS P.C.
                                             677 Broadway, 9th Floor
                                             Albany, NY 12207
                                             T: 518-512-8700
                                             vincent.polsinelli@jacksonlewis.com
                                             kristi.winters@jacksonlewis.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on April 27, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


*/s/ Kristi Rich Winters*
Kristi Rich Winters