**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**SAVANNAH BARROWS et al.,**

          **Plaintiffs,**

          v.

**BRINKER RESTAURANT**
**CORPORATION, d/b/a CHILI'S**
**GRILL & BAR,**

          **Defendant.**

_____

**5:19-cv-144**
**(GLS/ATB)**

## SUMMARY ORDER

Pending is a renewed motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure and compel arbitration pursuant to the Federal Arbitration Act (FAA) filed by defendant Brinker Restaurant Corporations, doing business as Chili's Grill & Bar.[1] (Dkt. No. 27.) For the reasons that follow, the motion is granted.

On April 26, 2019, Brinker filed a motion to dismiss and compel arbitration, arguing that, in connection with their "onboarding" as new hires, plaintiffs Savannah Barrows and Michael Mendez, a former and current employee of Brinker, entered into an arbitration agreement, which covers

---

[1] _See_ 9 U.S.C. §§ 1-16.

the claims in suit.² (Dkt. No. 15.)  In opposition, Barrows argued, among other things, that she completed all of her paperwork by hand upon being hired by Brinker's predecessor, and completed no additional paperwork when Brinker became the operator of the Chili's where she worked; she never accessed Chili's intranet, websites, or systems from any device except for a training video and once from a Chili's computer to enroll in Chili's 401K plan; and she never heard of or used the Taleo system, which was allegedly used to electronically sign the documents.  (*See generally* Dkt. No. 20.)  Mendez similarly argued, among other things, that he never used a computer or electronic device to fill out employment documents; he never accessed the Chili's intranet, websites, or systems from any device except for a training video; and he used the Taleo system only for his initial application.  (*See generally id.*)  On March 30, 2020, the court denied the motion with leave to renew.³ (Dkt. No. 26 at 6-7.)

    As to Mendez, Brinker has produced a copy of the arbitration

---

² Principally, Brinker asserts that plaintiffs electronically signed documents titled "Electronic Signature Agreement," "Receipt of Brinker's Hourly Team Member Policies & Procedures Manual," and "Mutual Agreement to Arbitrate."  (Dkt. No. 27, Attach. 2 at 13, 15, 21, 23, 25-28, 30-33.)

³ The court directs the parties to its March 30, 2020 Summary Order for a recitation of the underlying facts and procedural history.  (Dkt. No. 26.)

agreement that bears his actual signature. (Dkt. No. 27, Attach. 3 at 7.) In response, Mendez concedes that his claims are subject to arbitration. (Dkt. No. 28 at 1.) Accordingly, Brinker's motion as to Mendez is granted.

As to Barrows, Brinker argues the following: the parties agreed to arbitrate, and Barrows' electronic signature on the arbitration agreement is evidence that such an agreement was formed; and, in any event, Barrows' acceptance of and continued employment with Brinker binds her to the agreement. (Dkt. No. 27, Attach. 1 at 11-18.) In response, Barrows does not dispute that the arbitration agreement, if valid, encompasses her claims brought against Brinker. (Dkt. No. 28 at 4.) Instead, she argues that the agreement should not be enforced because she never signed or saw it. (*Id.*) Thus, she maintains, there are issues of material fact regarding the existence of an agreement, specifically, whether Barrows' signature is valid, and thus, discovery and a hearing is necessary to determine the validity of the electronic signature. (*Id.* at 17-18.)

"A motion to compel arbitration is reviewed under a summary judgment standard, and may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to

3

judgment as a matter of law." *Thomas v. Public Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). "In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law." *Id.* (citation omitted). If the existence of an agreement is properly put "in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Sphere Drake Ins. v. Clarendon Nat'l Ins.*, 263 F.3d 26, 30 (2d Cir. 2001) ("If the making of the agreement to arbitrate is placed in issue . . . the court must set the issue for trial." (citations omitted)). If, however, the court is satisfied that an agreement is valid, and thus the claims before it are arbitrable, "it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Thomas*, 957 F. Supp. 2d at 499.

"The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (citations omitted). "This burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed." *Id.* (citation omitted). "[T]he party putting the agreement to arbitrate in issue must present 'some evidence' in support of its claim before a trial is

4

warranted." *Sphere Drake Ins.*, 263 F.3d at 30 (citations omitted).  Thus, the party challenging the existence of an agreement must make "an unequivocal denial that the agreement had been made . . . , and some evidence should [be] produced to substantiate the denial." *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (citations omitted).

   Here, Brinker has provided relevant documentation of the electronic onboarding process, with supporting declarations from Chili's management. (Dkt. No. 27, Attachs. 2-3.)  For instance, Brinker explains how, upon finalizing the hiring process, Barrows was required to complete onboarding documents in Brinker's software system, Taleo, "which included, among other things, acknowledging and agreeing to various Brinker policies and procedures."  (*Id.*, Attach. 2 ¶ 18.)  In order to access these documents in the Taleo system, Barrows had to log in using her own unique username and password, which is not visible or accessible to any managers or other employees, and she had to enter her personal identifiable information.  (*Id.* ¶¶ 11, 13, 19.)  And, in order to electronically execute any document in Taleo, including the Electronic Signature Agreement and the Agreement to Arbitrate, she had to again enter her own unique password.  (*Id*. ¶¶ 12, 20,

26-27, 36.) Brinker explains how, rather than typing her own name, her electronic signature is obtained once she enters in her own unique password, which links her to execution of the document. (*Id*. ¶ 12.) According to Brinker's exhibits, Barrows electronically signed the arbitration agreement on September 13, 2015, (*id.*, Attach. 2 at 25-28), and, according to her clock-in report, Barrows worked at the restaurant for more than six hours on this day, (*id.*, Attach 3. at 9).

Brinker has met its burden of demonstrating that the parties agreed to arbitrate pursuant to an agreement, which was electronically signed by Barrows. Indeed, Brinker has explained the way in which Barrows' identifying information was used to acknowledge access to, and execution of, onboarding documents in Brinker's software system, including the Electronic Signature Agreement, which affirmed Barrows' willingness to complete and sign paperwork electronically, and the arbitration agreement. (*Id.*, Attach. 2 at 1-10.) Brinker has also produced a copy of Barrow's clock-in report to substantiate its claim that Barrows was working on the date she purportedly electronically signed the agreement. (*Id.*, Attach 3. at 9.)

In arguing that she never saw nor signed the arbitration agreement,

6

Barrows denies that she electronically signed any of the onboarding documents, including the arbitration agreement, and that she ever used, or heard of, the Taleo system. (Dkt. No. 28, Attach. 3 ¶¶ 18-20, 27-28.) In fact, she maintains that all of her onboarding paperwork was completed by hand, (*id.* ¶ 5); the only time she used a Chili's computer was to watch training videos and to enroll in a 401k plan, both of which were done on her cellphone, (*id.* ¶¶ 14, 30-31); and the only time she entered personal identifiable information into Brinker's electronic system was when entering her 401k information in 2018, (*id.* ¶ 31).

Although Barrows makes unequivocal denials that she saw or electronically signed the arbitration agreement, (*id.*, Attach. 3), she has produced no evidence to substantiate these denials, and, thus, her denial does not create a genuine issue of material fact. *See Interocean Shipping Co.*, 462 F.2d at 676; *Pettersen v. Volcano Corp.*, No. 18-cv-3021, 2020 WL 6323937, at *5 (E.D.N.Y. Sept. 8, 2020), *report and recommendation adopted*, No. 18-cv-3021, 2020 WL 6323122 (E.D.N.Y. Oct. 27, 2020) (finding an arbitration agreement signed with an electronic signature to be valid, holding that the plaintiff's disclaimer of her electronic signature, supported only by her own testimony, did not present a genuine issue of

7

material fact); *Perez v. Ruby Tuesday, Inc.*, No. 6:16-CV-795, 2019 WL 355637, at *4 (N.D.N.Y. Jan. 28, 2019) (rejecting the plaintiff's "self-serving refusal" of her electronic signature on an arbitration agreement, finding no genuine issue of material fact as to its validity).

Indeed, direct evidence that Barrows signed the agreement in question is not required—circumstantial evidence supporting the validity of her electronic signature is sufficient. *See Pettersen*, 2020 WL 6323937, at *4. Here, the circumstantial evidence supports a finding that Barrows' electronic signature on the arbitration agreement is valid, and her denial of her electronic signature does not present a genuine issue of material fact for trial.[4] As such, Brinker's motion as to Barrows is granted.

Accordingly, it is hereby

**ORDERED** that Brinker's motion to dismiss and compel arbitration (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is

---

[4] To the extent Barrows requests further discovery and a hearing, she has not suggested with any particularity what might be unearthed in discovery, and it is unclear why it is warranted or appropriate. Indeed, "an electronic signature may be used by a person in lieu of a signature affixed by hand," and "shall have the same validity and effect as the use of a signature affixed by hand." *Pettersen*, 2020 WL 6323937, at *4 (citations omitted). As explained herein, Barrows has failed to support her unequivocal denials with any evidence contradicting the electronically signed documents produced by Brinker, or the way in which Brinker obtained her electronic signature.

further

   **ORDERED** that the Clerk close this case; and it is further

   **ORDERED** that the Clerk provide a copy of this Summary Order to

the parties.

**IT IS SO ORDERED.**

February 18, 2021
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge