**MANDATE**

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of May, two thousand twenty-two,

Before:     Guido Calabresi,
            Gerard E. Lynch,
            Raymond J. Lohier, Jr.,
                *Circuit Judges.*

_____

Savannah Barrows, individually and on behalf of
all other persons similarly situated, Michael
Mendez, individually and on behalf of all other
persons similarly situated,

            Plaintiffs-Appellants,

v.

Brinker Restaurant Corporation, DBA Chili's
Grill & Bar,

            Defendant-Appellee.

_____

**JUDGMENT**

Docket No. 21-606

The appeal in the above captioned case from an order of the United States District Court for the Northern District of New York was submitted on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's grant of the defendant's motion to dismiss and to compel arbitration is VACATED, and the cause is REMANDED for further proceedings consistent with this Court's opinion.

            For the Court**:**
            Catherine O'Hagan Wolfe,
            Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

**MANDATE ISSUED ON 06/22/2022**

**IN THE**

# United States Court of Appeals

## For the Second Circuit

————

August Term, 2021

Submitted: April 5, 2022
Decided: May 31, 2022

No. 21-606-cv

Savannah Barrows, individually and on behalf of all other persons similarly situated, Michael Mendez, individually and on behalf of all other persons similarly situated,

*Plaintiffs-Appellants,*

*v.*

Brinker Restaurant Corporation, DBA Chili's Grill & Bar,

*Defendant-Appellee.*

————

On Appeal from the United States District Court
for the Northern District of New York

————

Before: Calabresi, Lynch, and Lohier, *Circuit Judges*.

————

Savannah Barrows appeals the district court's grant of defendant Brinker Restaurant Corporation's motion to dismiss her claims (per Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)), and to compel arbitration (per the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*). The district court concluded that Barrows failed to raise any triable issue of fact as to the validity of her purported arbitration

agreement with Brinker, and so granted Brinker's motion. We VACATE the district court's grant of Brinker's motion to dismiss and to compel arbitration, and REMAND for the district court to consider the merits of Barrows's claim further.

———————————————

          James E. Murphy, Michele A. Moreno, Virginia & Ambinder, LLP, New York, NY, *for Plaintiffs-Appellants.*

          Vincent E. Polsinelli, Kristi Rich Winters, Jackson Lewis P.C., Albany, NY, *for Defendant-Appellee.*

———————————————

CALABRESI, *Circuit Judge*:

        A restaurant worker sued her former employer, alleging a variety of employment law violations. The restaurant moved to dismiss her suit and to compel arbitration. It supported this motion by presenting an arbitration agreement bearing what appeared to be the worker's electronic signature. In a sworn declaration, however, the worker categorically and specifically denied that the signature was hers. She also pointed to other circumstantial evidence as to its inauthenticity. The district court (Sharpe, *J.*) concluded that the worker's evidence was insufficient to create a triable issue of fact, and so granted the restaurant's motion. Because that finding was erroneous, we VACATE the district court's judgment and REMAND for further proceedings.

1        **BACKGROUND**

2        Starting in March 2015, Savannah Barrows worked at a Chili's chain

3    restaurant in Liverpool, New York. When she was hired, the restaurant was

4    operated by Pepper Dining, Inc. ("PDI"). In June 2015, however, that Chili's

5    location was acquired by Brinker International Payroll Company, L.P.

6    ("Brinker").[1]

7        In January 2019, Barrows's employment with Brinker came to an end. She

8    then sued Brinker, alleging that she and a putative class of similarly situated

9    workers had suffered a variety of employment law violations.[2] Her suit was joined

10   by one other named plaintiff, Michael Mendez, who began work at the same

11   restaurant in 2017.

12       Brinker responded by moving to dismiss the suit (per Federal Rules of Civil

13   Procedure 12(b)(1) and 12(b)(6)), and to compel arbitration (per the Federal

---

[1] Although the case caption refers to "Brinker Restaurant Corporation," on appeal
defendant refers to itself as the "Brinker International Payroll Company, L.P.," and so
we use that name here.

[2] Specifically, the complaint alleged violations of the federal Fair Labor Standards Act,
29 U.S.C. §§ 206 and 207; New York Labor Law, N.Y. Lab. Law §§ 190, 191, 193, 195,
196-d, 198, 198-1, 651, 652, and 663; and the New York Codes, Rules, and Regulations,
title 12, §§ 142-2.5, 146-1.2, 146-1.3, 146-1.6, 146-1.7, 146-2.2, 146-2.3, 146-2.9, and 146-
2.14.

1    Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*). The district court denied this motion

2    with leave to renew, essentially because some of Brinker's argument and evidence

3    came only in its reply, thus preventing plaintiffs from responding.

4         Brinker then filed a renewed motion to dismiss and compel arbitration,

5    shifting its original reply material into its new opening brief. Its main supporting

6    evidence against Barrows was a set of arbitration agreements and other related

7    documents, each of which purportedly bore Barrows's electronic signature. The

8    record also showed that Brinker was the registered owner of the IP address of the

9    computer on which the arbitration agreements and related documents were

10   completed, suggesting that these were executed at the restaurant where Barrows

11   worked. Further, Brinker's timesheets showed that Barrows was working at the

12   restaurant on the day the electronic signatures were affixed to the documents.

13        Brinker further supported its renewed motion with the declaration of

14   Brandon Loeffler, who assisted in overseeing and maintaining the company's

15   online employee onboarding system. Loeffler stated that the onboarding process,

16   which required employees to sign various documents electronically, was

17   completed on "Taleo" platform software. The first time a Brinker employee

18   formerly employed with PDI used Taleo, she would have to log in with a

21-606-cv
*Barrows v. Brinker Restaurant Corporation*

1  temporary password comprised of her work location state, birth month, birth year,

2  and the last four digits of her social security number. After this first login, Loeffler

3  indicated, such users would create and use new, unique passwords. After doing

4  so, they could use the Taleo platform to review and sign any number of electronic

5  forms. And each time an employee wished to execute a document in Taleo via

6  electronic signature, she would be required to retype her unique password.

7  Brinker also produced the declaration of Joshua Planty, the restaurant's

8  general manager. Planty stated that "[a]ll [former] PDI employees," such as

9  himself and Barrows, "went through Brinker's onboarding process in 2015." App'x

10  186. Planty further averred that he had "never completed any onboarding

11  documents for Plaintiff Barrows . . . or any other Team Member," that he "never

12  instructed any other manager to complete onboarding paperwork for Plaintiff

13  Barrows . . . or any other Team Member," and that it was his "understanding that

14  if [he] ever created a username and/or password for a Team Member using their

15  personal information or if [he] electronically signed onboarding documents on

16  behalf of another Team Member without their authorization, that would be a

1 serious violation of Company policy, for which [his] employment could be

2 terminated." *Id.* at 187.

3        Daniel Michels, an assistant manager during Barrows's employment,

4 offered a nearly identical declaration: that he, and all former PDI employees, had

5 completed Brinker's onboarding process and "signed [an] Agreement to Arbitrate

6 electronically through the Taleo system"; that he had never filled out anyone else's

7 onboarding documents on their behalf; that he had never instructed any other

8 manager to do so; and that he understood that it would have been considered

9 serious misconduct if he had done so. *Id.* at 200–01.

10        Finally, Shawn Hand, also an assistant manager, offered essentially the

11 same statements as Planty and Michels.[3]

12        In addition to these declarations, Brinker also produced a paper arbitration

13 agreement that Mendez, the other named plaintiff, had signed by hand in 2017.

_____

[3] Notably, after the district court issued its judgment, Hand sought to recant this declaration, which he said he had "not read . . . closely," and instead to aver that, in fact, "while I was working for Chili's, the managers, including myself, did complete onboarding documents for Team Members and were instructed to do so by upper management." *See* Decl. of Shawn Hand at 1–2, Barrows v. Brinker Rest. Corp., No. 19-cv-144 (N.D.N.Y. June 28, 2021), ECF No. 35-4. Barrows moved for relief from judgment based on this new Hand declaration, but the district court denied her motion. Summary

1  Based on this document, Mendez concedes that his individual claims were

2  arbitrable. *See* Appellants' Br. at 7 n.3. Brinker produced no such hand-signed

3  agreement for Barrows.

4         Barrows, for her part, opposed Brinker's renewed motion to dismiss with a

5  sworn declaration in which she adamantly, and categorically, denied having

6  electronically signed any arbitration agreement. Specifically, she stated she had

7  never:

8    -  Completed any electronic employment paperwork for PDI during her
9       initial hiring (but instead completed all paperwork at that time by hand);

10    -  Completed any additional employment paperwork, of any kind, after
11       Brinker took over, or at any time after her initial hiring;

12    -  Used any of her employer's computers at the Chili's store for any purpose;[4]

13    -  Accessed Chili's website, electronic systems, or any of its "intranet" sites,
14       except to watch training videos on a cellphone app;

15    -  Heard of, accessed, or had any username or password for accessing, the
16       Taleo system;

17

---

Order, Barrows v. Brinker Rest. Corp., No. 19-cv-144 (N.D.N.Y. Mar. 3, 2022), ECF No.
39. Barrows's Rule 60 motion is not before us on this appeal, and we hence have not
considered this revised Hand declaration in deciding the appeal. That said, the district
court is of course free on remand to take Hand's new testimony into account.

[4] Barrows did, however, acknowledge that she used her cell phone while at work to sign
up for a 401(k) plan (albeit long after the arbitration agreements were purportedly
signed). This point is further discussed at footnote 8, *infra*.

- Saw or signed the arbitration agreement;

- Received, or signed any document showing receipt of, Brinker's policies and procedures; or

- Owned, or lived in a house with, a computer while employed at Chili's.

App'x 243–45.

Ultimately, the district court granted Brinker's motion and dismissed Barrows's suit. *See Barrows v. Brinker Rest. Corp.*, No. 19-cv-144, 2021 WL 638271, at *2–3 (N.D.N.Y. Feb. 18, 2021). This appeal followed.

## DISCUSSION

In considering an order compelling arbitration, we review de novo whether the parties have contractually bound themselves to arbitrate, and review for clear error the factual findings supporting that conclusion. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 72–73 (2d Cir. 2017). Because motions to compel arbitration are governed by a standard "similar to that applicable for a motion for summary judgment," a court must "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).[5] And if there is a disputed question of material fact, such that "the making of the

[5] Unless otherwise noted, case text quotations omit internal citations, footnotes, quotation marks, emphases, and previous alterations.

arbitration agreement . . . [is] in issue," then "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).[6]

Where parties are bound to an arbitration agreement, courts are instructed to favor arbitration as a form of dispute resolution. *See* 9 U.S.C. § 2; *New York v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996). But on the antecedent question of whether the parties actually agreed to arbitration (that is, whether an arbitration agreement between them exists at all), we show no such special solicitude. *See Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003).

---

[6] As noted, Brinker brought its renewed motion to dismiss and compel arbitration pursuant to three distinct mechanisms: Federal Rule of Civil Procedure 12(b)(1), Rule 12(b)(6), and the FAA, 9 U.S.C. § 1, *et seq.* The district court likewise recited these three bases in its order. *Barrows*, 2021 WL 638271, at *1. But despite these references, neither the parties nor the district court applied the distinctive standards of a Rule 12 motion to this matter. Instead, everyone involved treated Brinker's motion solely under our rubric for a motion to compel arbitration under the FAA. *See id.* at *2. Accordingly, we review this case under that same standard, and have no cause to take up the (somewhat vexing) question of which of these procedures should be favored when a party moves to dismiss and compel arbitration. *See Sinavsky v. NBCUniversal Media, LLC*, No. 20-cv-09175, 2021 WL 4151013, at *2-3 (S.D.N.Y. Sept. 13, 2021) (noting "lack of clarity in the case law of this Circuit as to what procedural mechanism should be employed by courts evaluating the enforceability of an arbitration agreement" as between Rule 12(b)(1), 12(b)(6), or the FAA); *Tyler v. City of New York*, No. 05-cv-3620, 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) (discussing uncertainty on this point and collecting cases variously dismissed under Rules 12(b)(1), 12(b)(6), and the FAA).

1   Instead, we resolve such agreement-formation questions as we would most any

2   contract dispute: by applying the law of the state at issue (which, as the parties

3   here agree, is that of New York). *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119

4   (2d Cir. 2012). And under New York law, unsurprisingly, parties that have not

5   agreed to arbitrate claims may not be forced to do so. *See TNS Holdings, Inc. v. MKI*

6   *Sec. Corp.*, 703 N.E.2d 749, 751 (N.Y. 1998); *Marlene Indus. Corp. v. Carnac Textiles,*

7   *Inc.*, 380 N.E.2d 239, 242 (N.Y. 1978).

8          When moving to compel arbitration, "[t]he party seeking . . . arbitration

9   bears an initial burden of demonstrating that an agreement to arbitrate was made."

10  *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). But

11  "[t]his burden does not require the moving party to show initially that the

12  agreement would be enforceable, merely that one existed." *Id.* Brinker produced

13  an arbitration agreement that appears to bear Barrows's electronic signature, and

14  thereby cleared this bar.

15         Accordingly, the burden shifted to Barrows, who needed to counter with at

16  least "*some evidence* . . . to substantiate [her] denial" that an agreement had been

17  made. *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676

18  (2d Cir. 1972) (emphasis added) (explaining that, to create a genuine issue for trial,

1   a nonmovant must make an unequivocal denial and substantiate it with some

2   evidence); *accord Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 30 (2d

3   Cir. 2001). In considering whether Barrows met this burden, the district court

4   completely discounted the evidentiary value of her sworn declaration. *See Barrows*,

5   2021 WL 638271, at *3 ("Although Barrows makes unequivocal denials that she

6   saw or electronically signed the arbitration agreement, ([citation to Barrows's

7   declaration]), she has produced *no evidence* to substantiate these denials . . . .")

8   (emphasis added).

9        That approach was incorrect. In reviewing motions to compel arbitration,

10   just as for motions for summary judgment, a court must "consider *all* relevant,

11   admissible evidence submitted by the parties and contained in pleadings,

12   depositions, answers to interrogatories, and admissions on file, together with

13   *affidavits*." *Nicosia*, 834 F.3d at 229 (emphases added). And in reviewing this broad

14   set of materials, "[t]here is nothing . . . to suggest that nonmovants' affidavits alone

15   cannot—as a matter of law—suffice to defend against" such a motion. *Danzer v.*

16   *Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998); *see also Bellamy v. City of New York*,

17   914 F.3d 727, 746 (2d Cir. 2019) ("Contrary to the district court's analysis, a . . .

18   plaintiff's testimony alone may be independently sufficient to raise a genuine issue

1 of material fact."); *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016) ("At summary

2 judgment, [plaintiff] was entitled to rely on his own testimony" to defeat

3 defendant's motion). Indeed, "[t]o hold . . . that the nonmovant's allegations of fact

4 are (because 'self-serving') insufficient to fend off" a motion to compel arbitration

5 "would be to thrust the courts—at an inappropriate stage—into an adjudication of

6 the merits." *Danzer*, 151 F.3d at 57.[7] For this reason, the district court erred when

7 it disregarded Barrows's sworn declaration as "nothing more than a *de facto*

8 extension of [her] pleadings." *Id.*

---

[7] *Accord Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 839–40 (6th Cir. 2021) (reversing grant of motion to compel arbitration where employee disputed authenticity of electronic signature on agreement "primarily with an affidavit denying that he had accepted the contract or received notice of [employer's] arbitration policy," and finding that "an unequivocal denial that takes the form of admissible evidence can create a genuine dispute of fact. . . . So a party might be able to obtain a trial under [9 U.S.C.] § 4 with a sworn denial that the party ever signed an arbitration agreement or received arbitration materials."); *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 374 (D.C. Cir. 2020) (same, and specifically rejecting argument that employee's "sworn statements could not, without more, create a genuine factual dispute because they were 'self-serving'"); *see also Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (rejecting concept that a party's "self-serving" affidavits must necessarily be discounted, because "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving . . . [and] the term 'self[-]serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment").

1    Of course, the fact that a party's declaration can defeat a motion to compel

2    arbitration does not mean it always will. Where a party merely states that she

3    cannot *recall* signing an agreement (as opposed to *denying* she has done so), such a

4    declaration ordinarily fails to create a triable issue of fact. *See F.D.I.C. v. Nat'l Union*

5    *Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000); *see also, e.g., Gonder v.*

6    *Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015). Likewise, where

7    "the facts alleged" in a nonmovant's declaration "are so contradictory that doubt

8    is cast upon their plausibility," then absent other evidence, granting the motion to

9    compel may be appropriate. *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98,

10   106 (2d Cir. 2011) (per curiam). Further, a party "normally does not show the

11   existence of a genuine issue of fact . . . merely by making assertions that are based

12   on speculation or are conclusory." *S. Katzman Produce Inc. v. Yazid*, 999 F.3d 867,

13   877 (2d Cir. 2021). And of course, a party's declaration will not create a material

14   issue of fact in those rare cases where it is "blatantly contradicted by the record, so

15   that no reasonable jury could believe it" (as when a plaintiff's declaration

16   statements are directly refuted by undisputed video evidence). *Scott v. Harris*, 550

17   U.S. 372, 380 (2007); *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d

18   Cir. 2021).

1      Barrows's declaration had none of these flaws. In specific and exacting

2    terms, and under penalty of perjury, she categorically denied ever completing any

3    electronic paperwork for either PDI or for Brinker; using any of her employer's

4    computers at her workplace; receiving or signing any documents showing receipt

5    of Brinker's arbitration policies; using the Taleo system; hearing about or having

6    any knowledge of the Taleo system; or, while employed by Brinker, owning, or

7    even living in a home with, any computer whatsoever. This detailed accounting,

8    submitted under oath, is surely "some evidence" that she did not agree to

9    arbitration.[8]

---

[8] At one point, Brinker suggests that we must discount Barrows's declaration because it supposedly contradicts an earlier one that she made in response to Brinker's initial motion. To be sure, where a party's declaration inescapably and unequivocally contradicts her earlier sworn statements, this can be a good reason to discount it. *See, e.g.*, *Margo v. Weiss*, 213 F.3d 55, 60–61 (2d Cir. 2000) ("[T]he plaintiffs cannot defeat a motion for summary judgment by responding with affidavits recanting . . . earlier testimony."). But the supposed inconsistency Brinker points us to is simply not of this magnitude (if, indeed, it is an inconsistency at all). *Compare* App'x 139 (Barrows's original statement that "[a]t no time during my work for Chili's did I use a computer at the Chili's store, except for one occasion near the end of my employment to enroll in the Chili's 401k plan"), *with* App'x 244 (Barrows's later statement that "[a]t no time during my work for Chili's did I use any computer at the Chili's store, except for one occasion near the end of my employment to enroll in the Chili's 401(k) plan, which I did from my cell phone while in the Chili's store. I never used a computer owned by Chili's in the Chili's store at any point for any reason."). Put simply, this sort of minor discrepancy, among two versions that equally support Barrows's position, is no cause to disregard

1    Further, we note specifically that this is not a case where Barrows's

2  declaration was "blatantly contradicted" by undisputed evidence from elsewhere

3  in the record. *Scott*, 550 U.S. at 380. While Brinker's declarants attest that a Taleo

4  user's password and account are secure once they are up and running, they also

5  admit that initiating a new account requires only some standard employee

6  information: "work location state; birth month; birth year; and the last four digits

7  of [a worker's] social security number." App'x 218. As Barrows observes,

8  moreover, even her standard I-9 form, which she completed for Brinker's

9  predecessor, would give an employer ready access to exactly such information

---

her sworn statements. *See Rojas*, 660 F.3d at 106 ("[W]e do not suggest that district courts should routinely engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment. . . . [I]f there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete."); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 696 (2d Cir. 2012) (concluding that summary judgment was inappropriate where inconsistencies in plaintiff's testimony were not "real, unequivocal, and inescapable contradiction[s]"). Of course, a factfinder at trial may consider any arguable inconsistencies between these affidavits in assessing Barrows's credibility. But that kind of assessment is not appropriate when evaluating a motion for summary judgment (or, by analogy, a motion to compel arbitration).

1    (and, by extension, the ability to set up an account and sign forms on Barrows's

2    behalf).[9]

3         Likewise, the fact that an IP address on the onboarding documents suggests

4    the Taleo agreements were ostensibly executed from a computer at the restaurant

5    where Barrows worked (and on a day she was on premises) proves much less than

6    Brinker suggests. Certainly, one might infer from the time and place of execution

7    that the electronic signature could be authentic. But the fact that the signature

8    came from a device that Brinker owned and possessed (rather than, say, Barrows's

9    home computer),[10] might also lead one to infer that Brinker's agents, and not

10   Barrows, were the ones who signed the documents (an inference which, at this

11   motion-to-compel stage, we must draw).

_____

[9] *Cf. Neuson v. Macy's Dep't Stores Inc.*, 249 P.3d 1054, 1058 (Wash. Ct. App. 2011) (denying motion to compel arbitration where electronic "signature" was replicable by anyone who knew "employee's social security number, birth date, and zip code," because defendant-employer offered no "evidence of how or why the information on this electronic signature would be unavailable to anyone other than [the employee]").
[10] *Cf. Schwalm v. TCF Nat'l Bank*, 226 F. Supp. 3d 937, 942 (D.S.D. 2016) (finding evidence for authenticity of electronic signature on arbitration agreement in part because IP address showed signature "originat[ed] from a computer . . . where [plaintiff] was living").

1      Brinker's position is further undercut by its production of Mendez's paper,

2    hand-signed arbitration agreement. That document, executed the same day that

3    Mendez purportedly also signed his electronic Taleo agreement, casts doubt on

4    Brinker's suggestions that all of its employees must have completed such

5    electronic paperwork. And of course, it also raises the question of why Brinker was

6    able to produce a hand-signed agreement for Mendez, but not Barrows.[11]

7      Combined, this evidence makes clear that Barrows has created a triable issue

8    of fact as to the validity of the signature on her electronic Taleo arbitration

9    agreements.

10      Finally, Brinker offers the alternative argument (not reached by the district

11    court) that under New York law, a party can manifest assent to a contract,

12    including an arbitration agreement, by continuing to work after being made aware

13    of the agreement, even if she never actually signs it. *See Maas v. Cornell Univ.*, 721

14    N.E.2d 966, 969–70 (N.Y. 1999) (discussing "implied-in-fact" contracts); *see also*

---

[11] Yet more doubt is sown by the substantial discrepancies between the electronic arbitration agreement Mendez supposedly signed and the paper agreement he concededly did sign. Among other things, the two differed significantly in their scope of covered disputes. *Compare* App'x 66–69 (Mendez electronic agreement), *with id.* at 191–92 (paper agreement). Such inconsistencies—entirely unexplained by Brinker—are further support for Barrows's position.

1   *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order). The

2   problem for Brinker, though, is that such course-of-conduct cases require, at a

3   minimum, that an employee have received the agreement (or otherwise had the

4   chance to learn of the agreement's existence). *Cf. Pettersen v. Volcano Corp.*, No.

5   18-cv-03021, 2020 WL 6323937, at *6 (E.D.N.Y. Sept. 8, 2020), *report and*

6   *recommendation adopted*, 2020 WL 6323122 (E.D.N.Y. Oct. 27, 2020). And at this

7   stage, the *only* evidence that Barrows received or was given direct notice of the

8   arbitration agreement's terms comes from a Taleo notice of receipt, App'x 57, a

9   document that was purportedly electronically signed in the same manner, and on

10  the same day, as the arbitration agreements themselves (that is, via the same

11  electronic signature that Barrows, *categorically and by affidavit*, denies making). *Cf.*

12  *Boykin*, 3 F.4th at 844 (rejecting analogous argument that employee's continued

13  employment sufficiently manifested assent to electronic arbitration agreement

14  because employee's affidavit swore he had no awareness of agreement's existence

1   and employer "offered no other evidence showing that [the employee] learned of

2   this arbitration condition in other ways").[12]

3       Accordingly, and drawing all inferences in Barrows's favor (as, at this stage,

4   we must), there is a triable issue of fact as to whether she ever received, or became

5   aware of, Brinker's arbitration agreements, regardless of whether she ultimately

6   signed them.

7       None of this is to say, of course, that Barrows's declaration, or her account

8   of events is, in fact, accurate. At this stage, we do not know. But in deciding a

9   motion to compel arbitration, as for a summary judgment motion, "a court must

---

[12] To the extent Brinker also suggests that Barrows had sufficient notice of the arbitration agreement because an employee manual containing the agreement was available and viewable on the company's intranet site (and was available as a hard copy upon an employee's request), that argument fails. Merely making documents accessible to employees who affirmatively seek them out is not, without more, the sort of direct notice necessary to establish an implied-in-fact agreement in this context. *Cf. Brown v. St. Paul Travelers Companies, Inc.*, 331 F. App'x 68, 69–70 (2d Cir. 2009) (summary order) (finding continued employment constituted assent to arbitration agreement outlined in employee handbook because, among other things, employer had distributed handbook to each employee, and had also sent email to each employee advising that they were responsible for reading and understanding all company employment policies); *Manigault*, 318 F. App'x 6, 7–8 (finding continued employment constituted assent to arbitration agreement where, among other things, employer introduced evidence that it had individually mailed the agreement to the addresses of each employee, and had verified such mail was not returned as undeliverable).

1    not weigh the evidence, or assess the credibility of witnesses, or resolve issues of

2    fact." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). And to the extent this

3    case turns on Barrows's (and on Brinker's) credibility or trustworthiness, the place

4    to sort it out is, as the FAA provides, at "trial." 9 U.S.C. § 4.

5    **CONCLUSION**

6    We VACATE the district court's grant of the defendant's motion to dismiss

7    and to compel arbitration, and REMAND for further proceedings consistent with

8    this opinion.