**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**SAVANNAH BARROWS,**

              **Plaintiff,**            5:19-cv-144
                                                (GLS/ATB)
              v.

**BRINKER RESTAURANT**
**CORPORATION,**

              **Defendant.**

---

## SUMMARY ORDER

In a February 18, 2021 Summary Order, this court granted defendant Brinker Restaurant Corporation's motion to dismiss and compel arbitration, (Dkt. No. 30), but the Second Circuit Court of Appeals vacated with respect to plaintiff Savannah Barrows[1] and remanded, (Dkt. No. 43). The parties agreed that a non-jury bench trial to resolve the factual disputes identified by the Second Circuit was the appropriate course of action for the adjudication of Brinker's motion following the appeal. (Dkt. No. 45.) Accordingly, the matter came before the court for a trial to determine whether Barrows agreed to arbitrate claims arising from her employment

---

[1] The Summary Order was not vacated with respect to plaintiff Michael Mendez, who "concede[d] that his individual claims [are] arbitrable." (Dkt. No. 43 at 7.)

with Brinker.

The parties stipulated to the admission of all exhibits on their respective exhibit lists, which included, among other things, the declarations filed in connection with the motion to dismiss and compel arbitration.  (Dkt. Nos. 49, 50.)  Notably, those declarations generally establish that an agreement to arbitrate was signed by Barrows electronically on September 13, 2015 — a day that she worked — as part of the onboarding process with Brinker when it succeeded Barrows' previous employer, Pepper Dining, Inc. (PDI).  (D. Ex. 7 ¶¶ 9, 28; *see* D. Exs. 1, 2, 4.)  Joshua Planty, the general manager of the restaurant where Barrows worked, denied completing Barrows' onboarding documents or directing "any other manager to complete onboarding paperwork for . . . Barrows."  (D. Ex. 8 ¶¶ 7-8.)  Planty further declared that to complete such paperwork would constitute a "serious violation of Company policy," which could result in termination.  (*Id.* ¶ 9.)

Barrows' declaration contains unequivocal assertions that she "did not sign" the Electronic Signature Agreement, Receipt of Brinker's Hourly Team Member Policies & Procedures Manual, or Mutual Agreement to Arbitrate.  (D. Ex. 10 ¶¶ 22-28.)  Lastly, Shawn Hand, an assistant

2

manager, provided two declarations. (D. Exs. 11, 12.) In his first declaration, submitted by Barrows in connection with its motion, Hand claimed that an on-site computer was sometimes used by employees for the completion of onboarding paperwork, that he did not complete Barrows' paperwork nor did he instruct anyone else to do so, and that Planty did not instruct him to do so. (D. Ex. 11 ¶¶ 7-9.) In his second declaration, which was prepared in connection with a motion for relief from the February 18, 2021 Summary Order and corresponding judgment filed by Barrows, Hand changed his story and alleged that he did not carefully review his earlier declaration and felt pressured to sign it. (D. Ex. 12 ¶ 7.) He then contradicts his earlier declaration by stating that he and other managers completed onboarding documents for employees and were instructed to do so by "upper management, including . . . Planty." (*Id.* ¶ 9.) Speculatively, Hand then claims that it would have been "completely consistent with [his] experience for [the restaurant] that a manager or assistant manager would have completed [the onboarding documents] for . . . Barrows and signed her name." (*Id.* ¶ 14.)

At the trial, Brinker also offered the testimony of Brandon Loeffler, Manager, People Systems for Brinker, and Planty, while Barrows testified

3

on her own behalf and called Hand as a witness.

Of note, the testimony of Loeffler established that managers did not have access to passwords of employees acquired from PDI, like Barrows. He also explained that, while managers had access to usernames, they generally did not have access to employee passwords. On cross-examination, Loeffler admitted that it would be possible for a manager to determine an employee's password provided that manager had some personal identifying information about that employee.

Planty testified that the on-premises computer could not be used to complete on-boarding paperwork through Taleo (Brinker's human resources software), and that employees primarily completed that paperwork on their personal telephones. Planty explained that, while he had access to employee usernames, he was unaware of passwords. He also denied completing Barrows' on-boarding paperwork or directing anyone else to do it.

Barrows testified that she never used Taleo, although she was familiar with it. She did not recall ever completing any paperwork electronically during her employment, including an agreement to arbitrate, and she specifically denied electronically signing any such agreement with

Brinker. She admitted to attempting to enroll in a 401(k) program on her telephone at some point in time while employed by Brinker, but, ultimately, she required assistance from one of the managers, who "finished it for [her] on their computer."

In conflict with Planty's testimony, Hand claimed that Taleo onboarding was done at the on-site computer in the manager's office by him and other managers. He elaborated that Planty "would instruct [him] to get some stuff done, when there was training videos to get done." In response to a question about what he did with respect to the onboarding process, Hand testified that he "would do [a particular employee]'s all the time because he just refused to do it." Hand, who was eventually fired from his position for a "bad survey," also explained away his first declaration — which undermined his testimony — by claiming that he feared retaliation if he refused to sign it.

After carefully reviewing all of the evidence before the court, Brinker has established by a preponderance of the evidence that Barrows agreed to arbitrate via the completion of the onboarding process through Taleo. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (holding that, under New York

5

Law as preempted by the Federal Arbitration Act, the preponderance of the evidence standard applies to the determination of whether parties agreed to arbitrate).  This is a close case, but the evidence tips, even if only slightly, in favor of Brinker.

The court largely credits the testimony of Loeffler and Planty.  Of particular significance is Planty's testimony that he did not complete Barrows' onboarding documents nor did he direct others to do so, which is fully credited as is his statement that he did not have access to the passwords of employees.  Hand's testimony, on the other hand, is generally discredited as inconsistent with his prior declaration, and the explanation for his change of heart from his first declaration to the second (and his trial testimony) is likewise rejected.  Hand's testimony was also not particularly relevant insofar as he did not testify with any specificity about Barrows' situation.  And his contentions that he completed onboarding for others seemed to conflate the issue of onboarding (and, as relevant here, electronically agreeing to arbitrate) and the completion of training videos.

Lastly, the court finds Barrows' testimony unpersuasive.  In other words, while Barrows testified that she did not electronically sign an

6

arbitration agreement because she "had no access," it seems more probable, in light of all the evidence, that her memory is faulty and that she either personally completed the paperwork — either on her telephone or in the manager's office — or, perhaps, she authorized one of the managers at the restaurant to do so on her behalf on September 13, 2015.

In light of the foregoing, and consistent with Rule 52(a) of the Federal Rules of Civil Procedure, Brinker has demonstrated to the court's satisfaction by a preponderance of the evidence that Barrows agreed to arbitrate. Accordingly, Brinker's motion to compel arbitration, (Dkt. No. 30), is granted.[2]

Accordingly, it is hereby

**ORDERED** that Brinker's motion to dismiss and compel arbitration (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

---

[2] Brinker's motion to dismiss, (Dkt. No. 27), is likewise granted because it does not appear that a stay has been requested. *See* 9 U.S.C. § 3; *Clookey v. Citibank, N.A.*, No. 8:14-CV-1318, 2015 WL 8484514, at *4 (N.D.N.Y. Dec. 9, 2015). Brinker confusingly asserts that "the Court should stay this action" and then seeks dismissal "or at least [a] stay," (Dkt. No. 27, Attach. 1 at 24-25), but the court does not construe Brinker's motion papers to seek a stay. And Barrows made no mention whatsoever of a stay in the event that arbitration was ordered.

7

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

July 25, 2023
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge